NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2493-14T2

RICHARD WALKER and KATHLEEN
WALKER, his wife,

    Plaintiffs-Appellants,

v.

COSTCO WHOLESALE WAREHOUSE,
Individually and d/b/a COSTCO
OF OCEAN TOWNSHIP,[1]

    Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **April 1, 2016**
>
> **APPELLATE DIVISION**

Argued March 14, 2016 — Decided April 1, 2016

Before Judges Sabatino, O'Connor and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2244-12.

Rui O. Santos argued the cause for appellants (Shebell & Shebell, LLC, attorneys; Thomas F. Shebell, III, of counsel; John H. Sanders, II, of counsel and on the briefs).

Robert A. Ballou, Jr., argued the cause for respondent (Garvey Ballou, attorneys; Mr. Ballou, of counsel and on the briefs).

---

[1] Defendant Costco Wholesale Corp. was improperly pleaded as Costco Wholesale Warehouse, individually and doing business as Costco of Ocean Township ("Costco").

The opinion of the court was delivered by

SABATINO, P.J.A.D.

In this slip-and-fall case, plaintiff appeals a judgment for the defendant wholesale store entered after the trial court declined his request to instruct the jury with a mode-of-operation liability charge. For the reasons that follow, we vacate the judgment and order a new trial at which the requested jury charge shall be given. As part of that charge, the court shall ask the jury to make a predicate factual determination of whether the substance on which plaintiff slipped came from a food sample offered to customers at a stand within the store.

## I.

Although some of the pertinent facts are disputed, the case is uncomplicated and it arises from a rather commonplace situation. At approximately 6:00 p.m. on Friday, October 7, 2011, plaintiff[2] Richard Walker went shopping with an acquaintance in a warehouse store in Ocean Township. The store is owned or operated by defendant Costco Wholesale Corp. ("Costco"). Plaintiff and his acquaintance were purchasing items for an upcoming breakfast fundraiser.

---

[2] We refer to Richard Walker as "plaintiff" even though the complaint names his wife Kathleen as a co-plaintiff on her per quod claim.

According to plaintiff's trial testimony, while he was in the course of shopping he passed a small table on which a vendor was offering what appeared to be free samples of cheesecake. The cheesecake samples were contained in small paper cups. Plaintiff walked past the display stand, apparently without taking a sample, and proceeded toward an area looking for packages of bacon. He was not pushing a shopping cart, which he had left with his acquaintance. He was wearing sneakers at the time.

Plaintiff testified that, as he turned a corner, he slipped on a substance on the floor. Plaintiff initially perceived that the substance had "a white appearance like a yogurt-based product." As he fell to the floor, plaintiff noticed that the side of his jogging pants were "wet" and "smeared" from the substance, although he "couldn't tell [the jury] exactly what it was."

Plaintiff did not estimate in feet the distance from the spot where he fell to the cheesecake stand. He did indicate on a diagram admitted into evidence that the stand was in the diagram's upper right area and that his fall occurred in the center right area, referred to as the store's "D-19" section.

As he fell, plaintiff grabbed the handle of a nearby cart. He felt his right shoulder pulling out of its socket, which he

attempted to put back into position with his other arm. He was later diagnosed with an anterior dislocation of his right shoulder, which he contended was caused by the fall.

The person who accompanied plaintiff to the Costco store that day was not with him the moment when he fell. She therefore did not observe the accident. Upon discovering that plaintiff had fallen, the acquaintance went over to the store's food court and requested a bag of ice for plaintiff. The ice bag was supplied and placed on his ailing shoulder. The acquaintance did not inspect the area of the floor where plaintiff fell. She was not asked during her trial testimony whether she recalled seeing a table with free cheesecake samples.

Defendant presented testimony from several witnesses, including an "administration manager" of the store. He testified that he encountered plaintiff at the accident location and that plaintiff told him that he fell on a "liquid." The manager observed no liquid on the floor while he was helping plaintiff. However, plaintiff's acquaintance testified, without objection, that another unidentified employee had stated in her presence that he had "cleaned up that area" after plaintiff's fall. See N.J.R.E. 803(b)(4) (delineating the hearsay exception for a statement by an opposing party's agent or employee

4                                                         A-2493-14T2

concerning a matter within the scope of that declarant's agency or employment, made during the existence of the relationship).

The administration manager explained that the company's maintenance policies require employees to walk the store on an hourly basis and inspect for trash and spills on the floors. While performing such hourly safety walks, the employees use a maintenance wagon equipped with a broom, mop and cat litter to soak up spills. According to the store's "floor walk sheet" for the day of the accident, the last floor inspection before plaintiff's fall was completed at 5:52 p.m. Several other store employees testified for the defense, and none of them observed any spills or substances on the floor in the area where plaintiff fell.

The defense witnesses confirmed that Costco typically has vendors giving out free food samples at various locations throughout the store. According to the store's "hard line manager," the stands are usually staffed by demonstrators between the hours of 10:30 or 11:00 a.m. to about 5:00 or 6:00 p.m.[3] The demonstrators are supplied with a mobile "caddy," brooms, dust mops, paper towels, and cleaning supplies. They

---

[3] Another defense witness, the assistant general manager, testified that the demonstrators would have been "off the floor for the most part by 5[:00], 5:30 on that day."

are expected to be responsible for maintaining the areas around their displays.

One defense witness who performs safety walks at the store described the offering of samples as a "common" practice "throughout the store." He stated that the samples are provided in "bite size pieces," and that "most of the time [customers] just pop it in their mouth." He acknowledged that sometimes customers, particularly children, may drop the food on the floor, but that the demonstrators typically "make sure that they pick[] up anything that fell."

Approximately eight to fifteen kinds of free food samples are typically given out on the sales floor at this Costco store. The assistant general manager acknowledged that Costco generates revenues from the sales of products that some customers buy after trying the vendors' samples. He also acknowledged that there are no restrictions on customers walking around the store with samples they may take from the display stands.

Plaintiff contended at trial that Costco was negligent in allowing a slippery substance to create a dangerous condition on the floor, which could cause an injury to the store's business invitees. He argued that the store's maintenance practices were inadequate and unreasonable, and that the store had at least

constructive notice of the slippery condition that caused him to lose his footing.

As an alternative to this theory of ordinary negligence, plaintiff sought to argue to the jury that the store had created a hazardous condition by its "mode of operation" in giving out free food samples to customers. Under this alternative theory, plaintiff sought to be relieved of his burden of proving actual or constructive notice of the presence of the slippery substance on which he allegedly fell. Plaintiff specifically requested in this regard that the court issue Model Civil Jury Charge 5.20F(11) to the jurors. That model instruction reads as follows, in two alternative versions:[4]

> **11. Notice Not Required When Mode of Operation Creates Danger**
>
> A proprietor of business premises has the duty to provide a reasonably safe place for his/her customers. If you find that the premises were in a hazardous condition, whether caused by defendant's employees or by others, such as customers, and if you find that said hazardous condition was likely to result from the particular manner in which defendant's business was conducted, and if you find that defendant failed to take reasonable measures to prevent the hazardous condition from arising or failed to take reasonable measures to discover and correct such hazardous condition, then

---

[4] Plaintiff did not specify at the charge conference which alternative he wanted the court to charge. In any event, the variations in the wording do not affect our analysis.

A-2493-14T2

defendant is liable to plaintiff. In these circumstances defendant would be liable even if defendant and his/her employees did not have actual or constructive knowledge of the particular unsafe condition, which cause[d] the accident and injury.

[Alternate Charge]

A proprietor of business premises has the duty to provide a reasonably safe place for his/her customers. If you find that a hazardous condition was likely to arise from the particular manner in which defendant's business was conducted and that defendant's employees probably were responsible either in creating such hazardous condition or permitting it to arise or to continue, defendant is liable to plaintiff if defendant failed to exercise reasonable care to prevent such hazardous condition from arising or failed to exercise reasonable care to discover and correct such hazardous condition. In these circumstances defendant would be liable even if defendant and his/her employees did not have actual or constructive knowledge of the particular unsafe condition, which caused the accident and injury.

[Where Appropriate Add:]

If you find that defendant did exercise reasonable care in . . . light of the risk of injury reasonably to be foreseen from the particular manner in which defendant conducted his/her business, then defendant would not be liable to plaintiff unless you find (a) that the hazardous condition was actually caused or created by defendant's employees or (b) that defendant had actual or constructive notice of the hazardous condition for sufficient time to have corrected it and failed to do so.

A-2493-14T2

[<u>Model Jury Charges (Civil)</u>, 5.20F(11), "Notice Not Required When Mode of Operation Creates Danger" (1970).]

Defendant opposed the issuance of a mode-of-operation charge, contending that the factual context here does not warrant such a jury instruction. Among other things, defendant has argued that plaintiff's recollection of slipping on a white "yogurt-based" product lacks a sufficient nexus to the cheesecake samples. Moreover, the defense has contended that the activity of providing such samples does not comport with the kinds of "self-service" retail activities that have supported a mode-of-operation charge under the applicable case law.

The court ruled at the charge conference that it would not issue a mode-of-operation instruction. The court found it significant that plaintiff had testified that he was unsure of what he fell on, having only described it as a "white yogurt-like substance."[5] The court recognized that the store permits customers to walk through the sales area with food and drink, but recalled no testimony that would "match up" the free items provided that day with the substance on the floor that caused plaintiff to slip.

---

[5] We discern no meaningful difference between the court's use of the term "yogurt-like" and plaintiff's phrasing as "yogurt-based."

Accordingly, the court instructed the jurors in the ensuing charge on traditional principles of premises liability, negligence, and causation. The negligence portion of the charge included plaintiff's obligation to prove defendant's actual or constructive notice of a dangerous condition. See Model Jury Charges (Civil), 5.20F(8), "Notice of Particular Danger as Condition of Liability" (2014).

The jury rendered a verdict for defendant, finding on the first question listed on the verdict form that plaintiff had failed to prove that defendant was negligent on the date of his accident. This form did not include a separate interrogatory asking whether plaintiff had proven the subsidiary element of actual or constructive notice. Because of this, we cannot tell from the verdict form whether the jurors voted in favor of defendant on the negligence question because of a failure by plaintiff to prove the element of notice or because it found that Costco's maintenance practices were reasonable, or for both reasons or some other reason or reasons.

Plaintiff moved for a new trial, reiterating his argument — this time with briefing — that the jurors should have been afforded a chance to evaluate whether defendant was liable under a mode-of-operation theory. Again, the trial court rejected plaintiff's argument, emphasizing its view that plaintiff had

not sufficiently shown the required nexus between his accident and Costco's method of doing business in using food vendors to distribute free food samples.

The court faulted plaintiff for being "unable to decisively identify the substance that he . . . slipped on[.]" The court noted that "no other evidence was introduced to show what the substance was or where it might [have] come from other than the suggestion that there was a cheesecake sample display nearby." As a matter of timing, the court further alluded to its recollection of the evidence that "vendors are all required to be . . . off the sales floor by 4:30 [p.m.] and this accident happened well after 6 o'clock [p.m.]" Lastly, the court found it significant that "the item that the plaintiff claimed was a yogurt-like substance" was alleged to be on the floor "in an area where there were completely other items being sold, i.e. fish and frozen goods or cold goods," thus reflecting a lack of nexus between Costco's business operations and plaintiff's harm.

## II.

On appeal, plaintiff contends that the trial court erred in rejecting his request for a mode-of-operation charge. Affording, as we must, all favorable reasonable inferences to plaintiff from the factual record, and with the guidance of applicable case law, including the Supreme Court's recent

opinion in <u>Prioleau v. Kentucky Fried Chicken, Inc.</u>, 223 <u>N.J.</u> 245 (2015), and other case law, we agree with plaintiff that a mode-of-operation charge was called for in this case. Such a charge is legally warranted here, provided that it include a specific instruction to the jurors to determine, as a factual predicate, whether the substance on which plaintiff slipped came from a free food sample offered to customers by one of the demonstrators.

### A.

"It is fundamental that '[a]ppropriate and proper charges to a jury are essential to a fair trial.'" <u>Velazquez v. Portadin</u>, 163 <u>N.J.</u> 677, 688 (2000) (alteration in original) (quoting <u>State v. Green</u>, 86 <u>N.J.</u> 281, 287 (1981)); <u>see also</u> <u>Washington v. Perez</u>, 219 <u>N.J.</u> 338, 350-51 (2014) (noting that "[o]ur law has long recognized the critical importance of accurate and precise instructions to the jury"). "A charge is a road map to guide the jury, and without an appropriate charge a jury can take a wrong turn in its deliberations[.]" <u>Das v. Thani</u>, 171 <u>N.J.</u> 518, 527 (2002) (quoting <u>State v. Martin</u>, 119 <u>N.J.</u> 2, 15 (1990)).

Our task in this appeal is to determine whether the trial court erred in declining to charge the jury on mode-of-operation principles as plaintiff had requested, and, if so, whether that

charging error "may have affected the trial's result." Washington, supra, 219 N.J. at 351. For the reasons that follow, we are persuaded that the charge should have been given in this case and that its omission was clearly capable of affecting the verdict on liability. R. 2:10-2 (recognizing the appellate court's authority to grant a new trial for errors "clearly capable" of producing an unjust result).

In civil matters, the trial court should give an instruction that appropriately guides the jury on the legal basis of a plaintiff's claim or a defendant's affirmative defense, so long as there is a reasonable factual basis in the evidence to support that claim or defense. See, e.g., Baglini v. Lauletta, 338 N.J. Super. 282, 305-06 (App. Div.) (ruling that the defendant would be entitled to an apportionment jury charge on remand in a negligence case provided there is a "rational basis for the jury to conclude that . . . fault . . . can be apportioned"), certif. denied, 169 N.J. 607 (2001); see also Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 565-66 (2003) (holding that the plaintiff was entitled to a mode-of-operation instruction because spillage of produce was a foreseeable risk and the reasonableness of the defendant's exercise of care was for the jury to decide).

The trial court must defer to the jurors as the ultimate fact-finders in deciding whether the evidence presented in support of a claim or a defense is credible, provided that such a reasonable basis exists to believe it. The court's instructions must "plainly spell out how the jury should apply the legal principles to the facts as <u>it</u> may find them[.]" <u>Velazquez</u>, <u>supra</u>, 163 <u>N.J.</u> at 688 (emphasis added); <u>see also</u> <u>Sun Coast Merchandise Corp. v. Myron Corp.</u>, 393 <u>N.J. Super.</u> 55, 82-83 (App. Div. 2007) (quoting same), <u>certif. denied</u>, 194 <u>N.J.</u> 270 (2008).

In essence, the court's function in deciding whether to provide a factually-grounded liability instruction is akin to its role in deciding whether to grant a motion for summary judgment or for a directed verdict. The requested instruction generally should be given, as long as there is a reasonable basis in the evidence to support the predicate factual contention that can trigger the charge, in light of the proofs and all reasonable inferences that may be drawn from those proofs. <u>Cf.</u> <u>R.</u> 4:46-2 (delineating the well-established summary judgment standard); <u>Brill v. Guardian Life Ins. Co. of Am.</u>, 142 <u>N.J.</u> 520, 523 (1995) (same); <u>Fruqis v. Bracigliano</u>, 177 <u>N.J.</u> 250, 269-70 (2003) (noting that the standard for granting a directed verdict equates with the standard for granting summary

judgment).  If reasonable minds might differ on the strength of the evidence, the court must "ensure that any legitimate dispute of material fact be left to the jury."  Akhtar v. JDN Props. at Florham Park, L.L.C., 439 N.J. Super. 391, 403 (App. Div.), certif. denied, 221 N.J. 566 (2015).

B.

Mode-of-operation liability principles have long been recognized in our state, in factual contexts where a dangerous condition of the premises has been shown to arise from a defendant's decision to provide goods to customers through "self-service" methods.  As Chief Justice Weintraub observed fifty years ago in Wollerman v. Grand Union Stores, Inc., 47 N.J. 426, 429 (1966), a case in which a supermarket customer shopping in the vegetable section slipped and fell when she stepped on a string bean on the floor:

> When greens are sold from open bins on a self-service basis, there is a likelihood that some will fall or be dropped to the floor.  If the [defendant] operator chooses to sell in this way, he <u>must do what is reasonably necessary to protect the customer from the risk of injury that mode of operation is likely to generate</u>; and this whether the risk arises from the act of his employee or of someone else he invites to the premises.  The operator's vigilance must be commensurate with that risk.
>
> [(Emphasis added).]

As the Chief Justice further noted in Wollerman, if the dangerous condition on the floor was the result of another patron's conduct in dropping the string bean, "since [that] patron's carelessness is to be anticipated in this self-service operation, [the] defendant [retail store] is liable, even without notice of the bean's presence on the floor[.]" Ibid. (emphasis added).

The effect of a mode-of-operation theory of liability — in self-service situations where there is a reasonable factual basis in the evidence to support that theory — is to relieve a plaintiff of having to prove the usual element of actual or constructive notice of a hazard, which otherwise is necessary for an ordinary claim of negligence. Such circumstances give rise to "a rebuttable inference that the defendant is negligent, and obviates the need for the plaintiff to prove actual or constructive notice." Prioleau, supra, 223 N.J. at 258.

The applicable Model Civil Jury Charge, 5.20F(11), implements this concept, by instructing that a defendant proprietor that has engaged in such a self-service mode of operation may be liable for an injury proximately caused by such a dangerous condition, "even if [the] defendant and his/her employees did not have actual or constructive knowledge of the particular unsafe condition [that] cause[d] the accident and

16                                                    A-2493-14T2

injury." Ibid. However, the model charge does not make a proprietor strictly liable for a slip-and-fall accident just because the hazard on the floor stemmed from a self-service mode of operation. The model charge also makes clear that the defendant is not liable in such circumstances unless it "failed to exercise reasonable care to prevent such [a] hazardous condition from arising or failed to exercise reasonable care to discover and correct such [a] hazardous condition." Ibid. (emphasis added); see also Prioleau, supra, 223 N.J. at 259-60 (noting that the defendant in such cases may rebut the inference of liability with counterproof that it exercised reasonable care, in light of its self-service mode of operation under the circumstances).

Our case law has found mode-of-operation liability concepts specifically applicable to situations where a proprietor has operated a cafeteria within a retail establishment in which patrons are permitted to carry food and drink freely within the confines of the premises. For example, in Bozza v. Vornado, Inc., 42 N.J. 355, 358 (1964), the Supreme Court held mode-of-operation principles applied to a cafeteria-style restaurant where the plaintiff slipped on a "sticky, slimy" substance. Patrons of the restaurant would order food at a counter, and were then permitted to carry that food to other parts of the

restaurant without trays or lids for their beverages.  Ibid.
The activity was treated as a "self-service" mode of operation
despite the fact that patrons were initially served food at the
counter by the defendant's employees.

Similarly, in Ryder v. Ocean Cty. Mall, 340 N.J. Super.
504, 509-10 (App. Div.), certif. denied, 170 N.J. 88 (2001), we
concluded that the "mode-of-operation" rule applied to a retail
mall where the plaintiff slipped on an "Orange Julius" drink
spilled in a common area where shoppers often stopped to consume
food that had been purchased elsewhere in the building.  Citing
Bozza, we ruled that the practice of allowing patrons to carry
food and drink within the confines of the defendant's mall
rendered it "the functional equivalent of a cafeteria."  Ibid.

In Nisivoccia v. Glass Gardens, Inc., supra, 175 N.J. at
565-66, the Supreme Court found the mode-of-operation theory
applied where a plaintiff had slipped on loose grapes near the
checkout lanes of a supermarket.  Testimony during the trial
showed that grapes most frequently had spilled onto the floor in
the produce aisle and the checkout area of the store, after
being handled by either patrons or employees.  Id. at 562.  The
Court underscored in Nisivoccia the various "self-service"
aspects of the defendant store's operations, including the
customer's handling of produce in the aisle, and later placing

18                                                A-2493-14T2

the items on the checkout counter. Id. at 565. The Court held that the "'[m]ode of operation' . . . includes the customer's necessary handling of goods when checking out, an employee's handling of goods during checkout, and the characteristics of the goods themselves and the way in which they are packaged." Id. at 566. Hence, the mode-of-operation concept applied, despite the employees' presence and involvement in the checkout process.

These cases and their mode-of-operation principles were recently cited with approval and applied by the Supreme Court in Prioleau, supra. The factual setting in Prioleau involved a plaintiff who slipped and fell on a greasy floor while walking to a restroom in a fast-food restaurant. Prioleau, supra, 223 N.J. at 251. The plaintiff argued that the proprietor was liable based on a mode-of-operation theory, contending that the greasy condition of the floor was likely caused by employees who tracked grease on their shoes while going to the restroom to and from the kitchen. The Court rejected that theory because the alleged condition was not the result of a "self-service" aspect of the restaurant's operations. Id. at 264.

The Supreme Court clarified in Prioleau that the concept of "self-service" signifies that "customers independently handle merchandise without the assistance of employees" at some point,

increasing "the risk that a dangerous condition will go undetected[.]"   Id. at 262.   Moreover, in analyzing the underlying facts in Prioleau the Court observed that

> nothing in the record suggests that when she fell, plaintiff was engaged in, or in contact with, any self-service activity, such as filling a beverage cup at a restaurant soda machine, selecting items from a condiment tray, or that patrons were carrying their drinks or food to the restroom area.
>
> [Id. at 251 (emphasis added).]

In keeping with these mode-of-operation precedents, the present case qualifies as a "self-service" context with respect to the free cheesecake samples that were offered to customers within the Costco store.  Although a defense witness described the samples as "bite sized," that same witness acknowledged that at times customers, particularly children, would walk away with the paper cups containing the samples without consuming them on the spot.

Here, as in Bozza and Ryder, the customers were freely permitted by defendant to carry food items around the premises, and to consume and discard them at their own pace.  Given that mode of operation, it was surely foreseeable that some portions of the cheesecake samples could be dropped on the floor, out of the sight of the demonstrator who had been distributing them at the sample table.  It was also foreseeable that some patrons

might take away an extra sample cup for a companion who was shopping with them in another location of the store, and that food fragments from those extra samples could be dropped as well, away from the vendor stand.

We recognize that the "self-service" fact patterns in Bozza and Ryder involved food and beverage items that were purchased by customers on the premises. Cf. Troupe v. Burlington Coat Factory, 443 N.J. Super. 596, 604 (App. Div. 2016) (finding a mode-of-operation theory inapplicable where a customer slipped on what appeared to be a berry that was neither sold nor provided by the defendant store). However, we discern no legal significance in whether the edible items are offered within a defendant's establishment for free or instead for sale. As the assistant general manager acknowledged, the free samples are offered to customers for its own business advantage, as a method of promotion and advertising to encourage customers to purchase take-home versions of those same products.

To be sure, our case law requires that a plaintiff demonstrate a reasonable nexus between the store's self-service activity and the dangerous condition allegedly producing his or her injury. See, e.g., Troupe, supra, 443 N.J. Super. at 603-04 (reiterating the nexus requirement); Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 245-46 (App. Div. 2013) (rejecting a

mode-of-operation claim where no nexus was shown between the defendant's sale of telephone calling cards displayed on a rack inside of the defendant store and plaintiff's accident in slipping on a discarded phone card on the sidewalk outside of the store).

Viewing the record here, as we must, in a light most favorable to plaintiff, there is a reasonable factual basis supporting such a nexus in this case. However, the jury must first be persuaded that the white substance on the floor that plaintiff perceived to be "yogurt-based" was, in fact, a portion of the free cheesecake samples. If the jury is not convinced of that source, then it must render a verdict for defendant on the issue.

We recognize that plaintiff was unable to identify with precision the substance on the floor that allegedly caused him to slip. There is a plausible basis, however, to believe that the white substance could have been cheesecake, which may well have become softer, creamier, and more "yogurt-like" in appearance after being displayed in sample cups for some unspecified time at room temperature. Plaintiff's inability to describe the substance in more exact terms is understandable given the sudden and traumatic nature of his fall. Of course, he may well have been mistaken in his description and the

22

substance could have come from another source, but that is a factual matter for the jury to evaluate.

We are mindful that, apart from the admissible hearsay statement that plaintiff's companion claimed to have overheard, none of the store employees who testified admitted that they observed any foreign substance on the floor in the area where plaintiff fell, but that does not render incredible plaintiff's claim that the substance was there. Nor do the hourly maintenance floor checks conducted by staff logically rule out an inference that a cheesecake sample had been dropped onto the floor during the interim after the last inspection took place, or that it had been overlooked during the inspection.

We likewise are mindful that the vendors were expected to leave the store, as one witness noted, by 6:00 p.m. and that plaintiff estimated that the time of his accident was after 6:00 p.m. Even so, we disagree with the trial court's post-trial observation that the estimated time frame eliminates a reasonable possibility that the offending morsel was dropped on the floor at some point before 6:00 p.m. and had not yet been detected or swept up when plaintiff stepped on it. Furthermore, the diagram of the premises attested to by plaintiff is reasonably consistent with his claim that the location of his

fall was a relatively short distance from where the cheesecake samples had been offered.

The trial court failed to give plaintiff the benefit of these reasonable inferences when it declined to allow the jurors as fact-finders to consider whether the factual predicates for mode-of-operation liability were proven here. Although plaintiff has not provided a particularly compelling factual basis to support his mode-of-operation argument, he presented enough evidence to at least justify the model charge being issued. The jurors should have been allowed to evaluate whether he met his threshold burden of proving the necessary factual nexus to a defendant's self-service activity. There also remain important factual questions about whether the substance was actually observed on the floor, whether Costco's inspections were adequate, and whether the locations and hours of the demonstrators' activities actually coincide with plaintiff's theory of liability.

C.

We therefore conclude that the trial court's rejection of the mode-of-operation charge here was prejudicial error, and that plaintiff is thereby entitled to a new trial at which the charge will be provided. That said, we provide several caveats for guidance to the court and the parties. First, as plaintiff

24

conceded at oral argument on appeal, the question of ordinary negligence is not to be tried a second time. Plaintiff already has had a fair opportunity to convince a jury at the first trial of Costco's liability under ordinary negligence principles and failed. That claim is conclusively decided. See Henebema v. S. Jersey Transp. Auth., 219 N.J. 481, 491-92 (2014) (holding that when a new civil trial is ordered because of a defect in the jury instructions, the original jury's disposition of certain discrete issues may be preserved if those issues are sufficiently distinct from the other matters that need to be litigated in the new trial).

Second, given the pivotal factual dispute here concerning nexus, the trial court on retrial shall include with the model charge a specific instruction advising the jurors that they cannot hold Costco liable under a mode-of-operation theory unless they find that plaintiff has persuaded them by a preponderance of the evidence that he slipped on a substance that came from the stand with free samples. At oral argument on the appeal, plaintiff conceded that there is no sufficient factual nexus to the store's food and beverage concession, which was located a further distance within the store from the spot where he fell. His claim at the second trial must specifically

turn on whether or not he slipped on a fragment of cheesecake offered at the vendor stand.

Third, we underscore that defendant retains the ability to rebut any mode-of-operation inference with competing proof that its maintenance activities to inspect for and clean up debris on the store's floor were reasonable under the circumstances. See Prioleau, supra, 223 N.J. at 259-60; Nisivoccia, supra, 175 N.J. at 564-65.[6]

The judgment for defendant is vacated and the matter is remanded for a new trial consistent with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[6] We need not address Costco's provisional argument raised at oral argument on the appeal that if a mode-of-operation theory is allowed on remand, then Costco should be able to implead the demonstrators as third-party defendants. We refer that procedural question, and the appropriateness of such a late request to amend the pleadings, to the trial court to consider in the first instance.