**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0716-19

ALEICE JETER,

    Plaintiff-Appellant,

v.

SAM'S CLUB,

    Defendant-Respondent,

and

LINDEN ROUTE ONE
ASSOCIATES,

    Defendant.

_____

Argued April 27, 2021 – Decided May 17, 2021

Before Judges Haas, Mawla, and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-3779-17.

John D. Gagnon argued the cause for appellant (Rabb Hamill, PA, attorneys; John D. Gagnon, of counsel and on the briefs).

Edward Solensky, Jr., argued the cause for respondent (Cottrell Solensky, PA, attorneys; Mark Chereshinsky, on the brief).

PER CURIAM

After plaintiff Aleice Jeter slipped and fell on a grape in the aisle of defendant Sam's Club East, LP,[1] Linden store, she filed a negligence complaint seeking to recover for her neck and back injuries. Relying on the mode of operation doctrine, plaintiff maintained she was excused from establishing that defendant had actual or constructive notice of any dangerous condition at the store.

Defendant maintained that the mode of operation doctrine was inapplicable because it only sold grapes in tabbed, interlocking clamshell cases that were further secured by tape. To resolve the issue, the court, sua sponte, conducted a N.J.R.E. 104 hearing and concluded the mode of operation doctrine was inapplicable. The court accordingly evaluated plaintiff's claim under well-established negligence principles and dismissed her complaint after determining plaintiff failed to establish that defendant was either actually or constructively aware of the presence of grapes on the aisle floor prior to her fall. Plaintiff also

---

[1] We note plaintiff initially improperly pled defendant as Sam's Club. Further, in a February 5, 2018 order, plaintiff dismissed its action against Linden Route One Associates.

2

challenges a separate decision in which the court barred her treating chiropractor from testifying at trial regarding her injuries and course of treatment.

We agree with court's decision to dismiss the complaint on notice grounds. In light of our decision, we do not reach the merits of plaintiff's arguments related to the court's decision barring the testimony of her treating chiropractor.

I.

We glean the following facts from the record developed at the N.J.R.E. 104 hearing. Plaintiff, while shopping with her daughter and granddaughter, slipped on a grape in the "grocery main aisle" of defendant's store. The incident was captured on a video surveillance camera and documented in a customer statement report by Brian Crumm, defendant's assistant store manager.

Trial was initially scheduled for June 3, 2019, and twice adjourned until August 12, 2019. On the initial trial date, defendant filed a motion in limine seeking to bar a mode of operation jury instruction. Before that application was decided, defendant filed a second motion in limine to bar the testimony of Mark C. Zientek, D.C., plaintiff's treating chiropractor.

With respect to the application to bar Dr. Zientek's testimony, defendant noted that plaintiff served Dr. Zientek's narrative report less than one week before trial, despite conducting the plaintiff's evaluation two years earlier, and

A-0716-19

asserted it would therefore be "highly prejudicial" to permit Dr. Zientek to testify. Plaintiff opposed the motion noting Dr. Zientek was explicitly identified in interrogatories and argued that she intended to call Dr. Zientek as a fact witness to testify regarding his treatment of plaintiff, not as an expert.

The court granted defendant's motion to bar Dr. Zientek from testifying at trial. In its accompanying oral decision, the court relied on Leitner v. Toms River Reg'l Schs., 392 N.J. Super. 80 (App. Div. 2007), and Bender v. Adelson, 187 N.J. 411 (2006), and concluded "anything [Dr. Zientek] would say [are] opinions about what he's treating" and plaintiff was improperly "attempt[ing] to produce a report just a few weeks before trial, long after arbitration, long after the discovery end date."

With respect to defendant's application to bar plaintiff from seeking a mode of operation charge, the court determined a N.J.R.E. 104 hearing was necessary to determine the applicability of the doctrine and, if it did not apply, whether triable issues of fact existed regarding defendant's actual or constructive notice. At the hearing, Crumm testified that any grapes sold by defendant would come in a "clamshell" and be taped closed. He further explained that grapes delivered to the Linden store would have already been taped in the plastic

A-0716-19

clamshells from a distribution center in Pennsylvania, and that defendant did not sell the grapes in any other containers.

On cross examination, Crumm "guarantee[d]" that on occasion customers improperly "tampered with" the closed and taped clamshell packaging to taste the grapes, a practice defendant's employees "frowned upon." Crumm also stated he was not sure whether grapes were among the free food samples occasionally provided to customers.

Plaintiff also testified at the hearing and stated that she shopped at the Linden store monthly. She recalled falling "halfway past" the fruit and vegetable aisle. She stated she previously observed loose grapes in the store and saw store employees hand out free samples of grapes, "[l]oose vegetables, [and] all type[s] of stuff" in "little cups." She also testified that she saw people opening the grape packages "[p]lenty of times."

After considering plaintiff and Crumm's testimony, the court determined the mode of operation doctrine was inapplicable to defendant's sale of grapes. The court found that defendant was "deliberately not selling . . . grapes in a loose form." It further explained that defendant's knowledge that customers occasionally opened the clamshell case to sample grapes did not "circumvent" defendant's mode of operation, which the court found was "targeted towards

safety." As noted, the court also concluded there was no evidence defendant had actual or constructive notice regarding "how long th[e] particular grape [was] on the floor," and dismissed the complaint with prejudice.[2] This appeal followed.

## II.

Before us, plaintiff argues that the court erred in ruling that the mode of operation doctrine did not apply to the facts of her case. Specifically, she contends defendant's knowledge that customers routinely opened the clamshells to eat grapes and its practice of handing out loose grapes "on at least some occasions," established a nexus between the dangerous condition and defendant's method in selling grapes. We disagree.

---

[2] We acknowledge the court's dismissal arose from defendant's motion in limine. On appeal, plaintiff does not challenge the procedure employed by the court, or its authority to conduct a N.J.R.E. 104 hearing to evaluate the issues provided by the motion. We have reviewed the record and are satisfied the court's actions did not violate plaintiff's due process rights. See Seoung Ouk Cho v. Trinitas Reg'l Med. Ctr., 443 N.J. Super. 461, 471 (App. Div. 2015) (addressing the impropriety of utilizing a motion in limine as a means to grant a dismissal on the merits). Here, plaintiff opposed defendant's motion, participated fully in the N.J.R.E. 104 hearing, and was not prevented from presenting any evidence or arguments in support of her position. See also Sheild v. Welch, 4 N.J. 563, 567 (1950) (holding a court has broad authority to settle questions of law prior to trial and "[if] no issue remains[,] judgment must necessarily follow for one or the other party.")

A-0716-19

In order to sustain a negligence claim, plaintiff has the burden to demonstrate four elements: "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." Townsend v. Pierre, 221 N.J. 36, 51 (2015) (citation omitted). As this is a premises liability case, defendant owed plaintiff "a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003); see also O'Shea v. K. Mart Corp., 304 N.J. Super. 489, 492-93 (App. Div. 1997).

Specifically, defendant had an affirmative duty "to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." Nisivoccia, 175 N.J. at 563. To establish a breach of this duty, plaintiff must demonstrate "that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." Prioleau v. Kentucky Fried Chicken, Inc., 223 N.J. 245, 257 (2015) (quoting Nisivoccia, 175 N.J. at 563).

The parties' respective burdens, however, change substantially under the mode of operation doctrine, which addresses "circumstances in which, as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of

A-0716-19

conduct or incidents." Nisivoccia, 175 N.J. at 563; see also Wollerman v. Grand Union Stores, Inc., 47 N.J. 426, 429 (1966) ("If the operator chooses to sell [products in a self-service] way, he must do what is reasonably necessary to protect the customer from the risk of injury that mode of operation is likely to generate . . . ."). When applicable, the rule "gives rise to a rebuttable inference that the defendant is negligent, and obviates the need for the plaintiff to prove actual or constructive notice." Prioleau, 223 N.J. at 258. Instead, the defendant has the "obligation to come forward with rebutting proof that it had taken prudent and reasonable steps to avoid the potential hazard." Nisivoccia, 175 N.J. at 563-64.

"[T]he mode-of-operation doctrine has never been expanded beyond the self-service setting, in which customers independently handle merchandise without the assistance of employees or may come into direct contact with product displays, shelving, packaging, and other aspects of the facility that may present a risk." Prioleau, 223 N.J. at 262; see also Walker v. Costco Wholesale Warehouse, 445 N.J. Super. 111, 121-24 (App. Div. 2016) (recognizing the application of mode of operation liability principles to businesses providing goods through "self-service" operations). The Court specifically rejected the idea that the doctrine applied whenever a risk of injury was "inherent in the

nature of the defendant's operation." Prioleau, 223 N.J. at 264 n.6 (internal quotation marks and citation omitted).

To invoke the doctrine, a plaintiff must prove that the dangerous condition arose from the business's self-service operation. "The dispositive factor is . . . whether there is a nexus between self-service components of the defendant's business and a risk of injury in the area where the accident occurred." Id. at 262. The doctrine will not apply, however, where there is no evidence that "the location in which [the] plaintiff's accident occurred . . . bears the slightest relationship to any self-service component of [the] defendant's business." Id. at 264.

In Nisivoccia, the plaintiff slipped and fell on some loose grapes when approaching the checkout lanes. 175 N.J. at 561. The grapes were displayed in the produce section in open-top, vented plastic bags that permitted spillage. Ibid. Although there was no evidence showing how the grapes fell to the floor, or how long they had been there, the Court held that the mode of operation doctrine was applicable. Id. at 561, 565. It found "[a] mode-of-operation charge is appropriate when loose items that are reasonably likely to fall to the ground during customer or employee handling would create a dangerous condition." Id. at 565. The court concluded that due to the way the grapes were packaged, it

was foreseeable that loose grapes could fall to the ground, creating a dangerous condition for customers walking in that area.  Ibid.

With these principles in mind, we evaluate the record before us.  Here, it is undisputed that defendant operated a self-service business that required customers to "independently handle" the goods they sought to purchase.  Prioleau, 223 N.J. at 262.  Further, the location of plaintiff's fall occurred in the grocery main aisle, halfway past the produce area according to plaintiff's testimony.  As such, the location of her accident "bears [a] . . . relationship" to the self-service component to defendant's business.  Id. at 264.

The record, however, fails to establish a nexus between the dangerous condition and defendant's mode of operation.  Defendant's mode of operation was to sell grapes in sealed clamshells.  Indeed, it "frowned upon" customers who undid the tape to open the containers before purchasing the grapes and characterized that practice as "tamper[ing]" with the product.  The self-service component of defendant's business, therefore, is dissimilar to the customers who handled loose grapes in Nisivoccia.  See 175 N.J. at 562.  Further, the "nature of [defendant's] business" did not result in a "pattern of conduct or incidents" that would support application of the doctrine.  Id. at 563.

10

We agree with the court that the fact that defendant knew certain customers tampered with the clamshells or that they were designed to be opened and closed does not mandate a different result. Many products commonly sold in grocery stores are designed to be resealed between uses, such as cookies or other snacks. As noted by the Supreme Court, the mode of operation doctrine applies when "a business permits its customers to handle products and equipment, unsupervised by employees." Prioleau, 223 N.J. at 262 (emphasis added). We are satisfied that defendant's actions, or knowledge that certain customers improperly opened the closed containers, did not invite customers to act in such a manner.

We also reject plaintiff's reliance on Walker as that case is factually inapposite. There, the plaintiff was shopping at the defendant's warehouse store and passed a vendor offering free samples of cheesecake in small paper cups. 445 N.J. Super. at 114. Plaintiff then slipped on a substance on the floor, which he initially perceived as having a yogurt-like appearance. Ibid. At trial, plaintiff could not estimate the distance between where he fell, and the cheesecake stand, but was able to indicate on a diagram where both were located. Ibid. The trial court declined to give a mode of operation charge. Id. at 118. We remanded, finding there was a nexus between plaintiff's fall and the cheesecake stand and

11

that there was a "plausible basis . . . to believe that the white substance could have been cheesecake." Id. at 126-27.

Here, the only evidence in the record regarding defendant's practice of providing loose, free samples of grapes to customers is plaintiff's testimony that it occurred at some indeterminate point and at some unknown location in the Linden store. In this regard, the record, or any reasonable inference to be drawn therefrom, does not support the conclusion that grapes were given out on the day or even the week of plaintiff's fall. As such, any inference of a nexus between providing sample grapes and plaintiff's fall would be entirely speculative. Simply put, there was no "reasonable factual basis" for the court to charge the mode of operation doctrine. Walker, 445 N.J. Super. at 120.

### III.

Having determined the court correctly applied the mode of operation doctrine, we evaluate plaintiff's claim under traditional negligence principles. As noted, plaintiff's counsel acknowledged that the record was devoid of any proofs to establish defendant had actual notice of grapes in the aisle of the Linden store where plaintiff fell. Plaintiff argues, however, that defendant had constructive notice because defendant's in-store surveillance video did not "depict any inspection, cleaning, or measures performed by defendant's

12

employees in the area where the incident occurred." She further contends defendant "did not provide any evidence whatsoever that it took any measures to ensure the safety of its premises by way of performing regular inspections, training of its employees to address safety issues, or the like." Again, we disagree.

Courts "have long held that it is ordinarily a plaintiff's burden to prove negligence, and that it is never presumed." Khan v. Singh, 200 N.J. 82, 91 (2009). "[I]ndeed there is a presumption against it . . . ." Buckelew v. Grossbard, 87 N.J. 512, 525 (1981). Thus, "an invitee seeking to hold a business proprietor liable in negligence 'must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident.'" Prioleau, 223 N.J. at 257 (citation omitted). "The mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" Arroyo v. Durling Realty, L.L.C., 433 N.J. Super. 238, 243 (App. Div. 2013) (alteration in original) (citation omitted).

A defendant has constructive knowledge "when the condition existed 'for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent.'" Troupe v. Burlington Coat Factory Warehouse Corp., 443 N.J. Super. 596, 602 (App. Div. 2016) (citation omitted).

13

"The characteristics of the dangerous condition giving rise to the slip and fall" or eyewitness testimony regarding the length of time the conditions existed "may support an inference of constructive notice about the dangerous condition." Ibid.

In Troupe, the plaintiff slipped and fell on a berry located on the floor of the defendant clothing store. 443 N.J. Super. at 600. The court noted the plaintiff did not provide any evidence showing how long the berry remained on the floor, or that any employee should have known the berry was there. Id. at 602. Therefore, the court ruled the defendant had no constructive notice regarding the berry on the floor. Ibid.

Here, as in Troupe, the record is devoid of any evidence the defendant had constructive notice of grapes on the floor in any location in the Linden store at any time. Plaintiff proffered no evidence showing defendant's employees knew or should have known before plaintiff's fall that there were grapes on the main aisle's floor. Moreover, there was no evidence about how long grapes were there, such as eyewitnesses or any aged characteristics of the grapes, to indicate the amount of time defendant had to discover and remedy the situation. The surveillance video plaintiff relies on depicts from a distance many people walking in the same area prior to her fall but does not permit an inference that

14

grapes were on the ground at all, let alone for any length of time.[3]  The absence

of evidence of "actual or constructive notice . . . is fatal to plaintiff's claims of

premises liability."  Arroyo, 433 N.J. Super. at 243; see also Brown v. Racquet

Club of Bricktown, 95 N.J. 280, 291 (1984).

Because we conclude the court correctly dismissed the matter, we need

not consider plaintiff's argument that the court committed reversible error in

barring the testimony and expert report of Dr. Zientek.  To the extent we have

not addressed any of plaintiff's remaining arguments, it is because we have

determined that they are without sufficient merit to warrant discussion in a

written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3]  Plaintiff's counsel raised for the first time during oral arguments before us that the surveillance video depicts one of defendant's employees looking at what could be a grape on the ground prior to plaintiff's fall.  We decline to address this issue as it was not raised before the trial court.  See Nieder v. Royal Indem. Ins., 62 N.J. 229, 234 (1973).  In fact, such proofs would constitute actual notice, which plaintiff's counsel explicitly conceded before the court did not exist in the record.  In any event, were we to address the claim on the merits, we conclude after having reviewed the video that plaintiff's claim that defendant's employee saw a grape on the aisle prior to plaintiff's fall is unsupported by the record.

A-0716-19