WILLIAMS, Judge.
In this slip and fall action, the defendants, Brookshires Grocery Company d/b/a Super One Foods and its insurer, Hartford Insurance Company, appeal the trial court’s judgment in favor of the plaintiff, Sushila Kedia[1]. The trial court awarded the plaintiff general damages, medical expenses and lost wages for injuries sustained after she slipped and fell while shopping in the defendant’s store. The trial court allocated 65% fault to the defendants and 85% fault to the plaintiff. For the following reasons, we amend the trial court’s judgment and affirm as amended.
FACTS
On January 18, 1993, at approximately 5:30 p.m., the plaintiffs, Ray and Sushila Kedia were shopping in Super One Foods grocery store located on Cypress Street in West Monroe, Louisiana. The plaintiffs were in the rear of the store, near the dairy section, when Sushila Kedia slipped on a wet “hot sheet”[2] and fell. Ray Kedia was a short distance behind his wife, pushing a shopping cart and did not witness the accident. When he directed his attention toward his wife, she had already fallen to the floor.
Mark Walden, an assistant manager at Super One Foods, and Linda Norwood, a store patron, witnessed the accident. Walden and Ray Kedia helped plaintiff up from the floor. Walden then escorted the plaintiffs to the office where he completed an accident report. The accident report indicated that the plaintiff “stepped on a wet piece of paper that was on the floor and fell....”
The plaintiff, Sushila Kedia, testified that she was walking towards the dairy freezer to get some milk when she slipped and fell. She also testified that [ ?she did not know what caused her to fall, but after the fall, she noticed a piece of paper and a puddle of a white substance with traces of dirt. Linda Norwood testified that she went to assist the plaintiff after the accident and noticed a liquid substance that was milky and dirty on the floor in the area where the plaintiff fell.
Walden testified that it was the store’s standard procedure to have someone inspect the floors every two hours and document the inspection in the store’s log book. The store’s clean-up logbook reflected that the last floor inspection prior to the accident occurred at 1:44 p.m. The accident occurred at 5:35 p.m.
On the next day, the plaintiff was treated by Dr. Thomas Brantley, an urgent care physician. She complained of pain in her foot, ankle, back and shoulders as a result of the accident. On February 8, 1993, the plaintiff was treated by Dr. James Finley, an orthopaedic surgeon. At that time, she complained of neck pain that radiated into her shoulder. Dr. Finley diagnosed the plaintiff with a cervical sprain and no evidence of any disc pathology. Dr. Finley treated the plaintiff again on February 22, 1993. He noted that the plaintiff had improved; however, she had not totally recovered. He prescribed strengthening exercises to resolve her remaining problems.
After a bench trial, judgment was rendered in favor of the plaintiff, awarding $7,000 in general damages, $3,241.50 in medical expenses and $1,200 in lost wages. The trial court found the plaintiff 35% at fault in causing the accident and reduced *947 the amount of damages by that percentage. The trial court noted that the cause of the accident was the wet hot sheet in the aisle. The trial court concluded that Mark Walden and the utility clerks who assisted him in stocking the dairy cases had an unobstructed view of the area at the time of the accident. The defendants appeal the trial court’s judgment. In an answer to the appeal, the plaintiffs urge that Sushila Kedia was not at fault, and alternatively, that she was only 10% at fault.
IsDISCUSSION
The defendants argue that the trial court erred in finding that the plaintiff proved that the accident occurred as a result of a hazardous condition in the defendant’s store. They also argue that the trial court erred in finding that the defendant’s employees created the hazardous condition, and further, that the defendants had constructive notice of the condition.
LSA-R.S. 9:2800.6 governs a negligence action against a merchant for damages resulting from injuries sustained in a slip and fall. The statute, as revised in 1990 and applicable to the present case, provides:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence;
(3) The merchant failed to exercise reasonable care.
C.Definitions:
(1) “Constructive notice” means the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.
The defendants argue that the plaintiff failed to prove that the accident occurred as a result of a hazardous condition in the defendant’s store. However, witnesses, including Walden, the store’s assistant manager, testified that the plaintiff fell after slipping on a wet hot sheet on the floor in defendant’s store. |4Walden also testified that there was a small skid mark that appeared to be a result of the plaintiffs foot sliding on the paper. It is undisputed that the plaintiffs accident occurred when she slipped on the advertisement paper. However, the evidence of the record does not establish why the wet paper was on the floor.
Walden testified that the hot sheets were kept in an “ad box” in the front of the store and the customers were encouraged to carry the hot sheets throughout the store to use while shopping. Apparently, when the hot sheets were discarded by the customers, some of them were thrown or dropped to the floor. Walden testified that there was no store policy or procedure to ensure that the floors and aisles were safe and free of the discarded hot sheets.[3] According to Walden, there *948 were garbage cans located in some areas throughout the store. However, he stated that he was not aware of the exact number of garbage cans located in the store or if a garbage can was located in the area where the accident occurred. He later admitted that he could only recall that a garbage can was located in the delicatessen area.
The trial court concluded that the hot sheet became wet after being taken out of the store in a cart by a customer. Because it had been raining on the day of the accident, the court further concluded that the cart was brought back into the store by a utility clerk who failed to remove the wet hot sheet from the cart. The trial court found that a customer who had used the hot sheet later dropped it on the aisle floor where the plaintiff fell. The trial court noted that a wet hot sheet, on an aisle where the attention of customers is diverted to merchandise, poses an unreasonable risk of injury. The court found that the defendant was responsible |sfor this negligence and that the defendant failed to exercise reasonable care because the risk could have easily been eliminated “by the utility clerks policing the shopping carts before they enter the store.” The trial court further concluded that the management was aware that hot sheets would be left in the carts, and, on rainy days, some of the wet hot sheets would be brought back into the store by the customers, thus creating an unreasonable risk of harm.
The trial court’s conclusion as to why the wet hot sheet was on the floor is somewhat speculative. Neither party clearly established why the wet hot sheet was on the floor. Other possibilities as to why the paper was on the floor were never considered or eliminated, such as the possibility that the hot sheet was intentionally tossed or accidently dropped on the floor by a customer.
Although the trial court’s finding as to why the paper was on the floor was speculative, its conclusion that the wet hot sheet on the floor created an unreasonable risk of harm was not clearly erroneous. The defendant printed and distributed the hot sheets, and therefore, the defendant should have foreseen the possibility that the customers would discard the hot sheets throughout the store. However, because the evidence does not clearly establish that the defendant either created or had actual knowledge of the hazardous condition, the plaintiff was required to establish that the defendant had constructive notice of the condition.
LSA-R.S. 9:2800.6 provides that “constructive notice” means the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. Although there is no “bright line” time period, a plaintiff must show that the condition existed for such a period of time that it would have been discovered if the defendant had exercised reasonable care. Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period. White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97), 699 So.2d 1081.
Although it is not necessary that the time period be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall. White v. Wal-Mart Stores, Inc., supra; Dawson v. Brookshire Grocery Co., 31,042 (La.App.2d Cir.9/23/98), 718 So.2d 623.
Walden testified that he and at least two other employees were stocking the dairy case at the time of the accident. He also testified that all employees are “trained” to observe the condition of the store’s floor at all times. Walden admitted that he walked in the area where the plaintiff fell approximately ten minutes prior to the accident and he did not notice the wet hot sheet on the floor. It appears that neither Walden nor the other employ *949 ees noticed the wet hot sheet while stocking the dairy case. Although the record reflects that almost four hours passed between the time of the last floor inspection and the accident, the store’s clean-up policy required inspections every two hours.
Both the plaintiff and Linda Norwood testified that the area where the hot sheet was located, and where plaintiff slipped and fell, was wet with a liquid that appeared milky and dirty. Their testimony supports the trial court’s conclusion that the hazardous condition created by the wet, dirty area and the hot sheet had existed for a sufficient length of time prior to the accident to afford the defendant’s three “trained” employees with constructive notice of the danger, had they been reasonably observing the floor on this rainy day.
After reviewing the entire record, we conclude that the direct and circumstantial evidence supports the trial court’s findings that the hazardous condition existed for some time prior to the accident and would have been discovered if the defendant had exercised reasonable care. The defendants’ assignments of error are without merit.
Pursuant to Watson v. State Farm, Fire & Casualty Ins. Co., 469 So.2d 967 17(La.1985), the trier of fact will compare the relative fault of the parties in the assessment of liability. The allocation of fault is a factual determination subject to the manifest error rule. Hundley v. Harper Truck Line, Inc., 28,613 (La.App.2d Cir.9/25/96), 681 So.2d 46.
In allocating fault, the trial court considered the area in which the plaintiff was walking at the time of the accident and the fact that she was not pushing a shopping cart, which could have obstructed the floor area immediately in front of her. The trial court concluded that, while the plaintiff is expected to have had some decreased attentiveness while shopping, some percentage of fault should be charged to her. The court assessed the plaintiff with 35% fault.
Obviously, the use of the “flyers” was implemented by the store’s management because of its desire to boost sales and encourage customer impulse buying. On the other hand, at the time of her fall, the plaintiff was not pushing a shopping cart and was merely proceeding to the dairy case. The green sheet of paper was lying on a floor which was white with large green and gold stripes. Thus, the sheet may not have been as visible as it would have been had the floor been a solid color.
Further, the defendants were in a superior position to remedy the hazardous condition. The plaintiff had not been trained as were the store employees, who were present in the immediate area, but who failed to observe the wet, dirty area and hot sheet on the floor. In addition, the evidence shows that the plaintiff acted reasonably while engaged in shopping. Therefore, although we agree with the trial court’s finding that plaintiffs attention was not totally distracted by shelved merchandise, we find that her conduct in not observing the wet paper on the floor does not give rise to a finding of 35% fault on her part. The trial court was clearly wrong in its allocation of fault.
Based on this record, we conclude that the highest proportion of fault that |Rthe trial court could reasonably assess to the plaintiff is 15%. Accordingly, the judgment will be amended to allocate 85% fault in causing the accident to defendants and 15% fault to the plaintiff, Sushila Kedia.
CONCLUSION
For the foregoing reasons, the trial court’s judgment is amended to assess 85% fault to defendants, Brookshires Grocery Company d/b/a Super One Foods, Inc. and its insurer, Hartford Insurance Company, and 15% fault to the plaintiff, Sushila Ke-dia. In all other respects, the judgment is affirmed. Judgment is rendered in favor of plaintiff for $9,725.27, representing 85% of her damages. Costs of this appeal are *950 assessed to the appellants, Brookshires Grocery Company d/b/a Super One Foods, Inc. and its insurer, Hartford Insurance Company.
AMENDED AND AFFIRMED AS AMENDED.
CARAWAY, J., concurs in part and dissents in part with reasons.

. The trial court denied Ray Kedia's claim for loss of consortium, finding that it was not supported by the evidence or briefed by the parties.

. A “hot sheet” is a two-page, letter-sized leaflet distributed by the store for in-store advertisement.

. Walden testified that the utility clerks were instructed to remove any wet hot sheets from the shopping carts after the carts were taken out of the store into the rain and the sheets became wet. However, there was no procedure to ensure that the customers did not place hot sheets into wet shopping carts and discard them throughout the store.