NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0967-12T3

JACQUELIN ARROYO,

    Plaintiff-Appellant,

v.

DURLING REALTY, LLC,

    Defendant-Respondent.

_____

```
APPROVED FOR PUBLICATION

   OCTOBER 23, 2013

 APPELLATE DIVISION
```

Submitted October 8, 2013  –  Decided  October 23, 2013

Before Judges Messano, Sabatino and Hayden.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2282-11.

Zavodnick, Perlmutter & Boccia, L.L.C., attorneys for appellant (Christopher S. Byrnes, on the brief).

Suzanne D. Delvecchio, attorney for respondent.

The opinion of the court was delivered by

SABATINO, J.A.D.

In this personal injury case, plaintiff Jacquelin Arroyo appeals the trial court's grant of summary judgment to defendant, Durling Realty, LLC.  We affirm.

Defendant owns and operates a Quick Chek convenience store in Wantage.  On May 16, 2010, plaintiff and her friend, who had

been camping nearby, went inside the store. It was around 10:00 p.m., although the area outside the store was brightly lit. Plaintiff and her friend purchased coffee and a few other items, and then left the store.

According to plaintiff, after she left the store, she slipped on a discarded telephone calling card, which was on the sidewalk near the store entrance. Plaintiff injured her knee as a result of her fall, requiring medical treatment.

Plaintiff claims in this negligence action that the presence of the plastic card on the sidewalk created an unreasonably dangerous condition. In support of her theory, plaintiff notes that the phone cards are displayed on racks near the store's cash register and the exit doors. Given that proximity, plaintiff argues, in essence, that defendant should have foreseen that the purchased cards would be taken out of the store, immediately used, and discarded on the sidewalk.

Defendant's store manager stated in his deposition that the front of the store is swept for cigarette butts and other miscellaneous debris ten to fifteen times daily, and that the entire front sidewalk and parking lot are swept twice each day. In addition, he indicated that at the end of each shift, the employees are required to sweep the area outside and make sure that it is clean. The area is also vacuumed every two or three

A-0967-12T3

days. On the night in question, a shift ended at 10:00 p.m., shortly before plaintiff and her friend arrived. There is no proof that any store employee was aware of the presence of the card on the sidewalk in advance of plaintiff's mishap.

Plaintiff retained as a liability expert a construction consultant, who opined that the store should have had handy trash cans at the exit and also a regular sweeping schedule. In addition, plaintiff argues that the store is liable under a mode-of-operation theory.

After considering these arguments, the motion judge, Lourdes I. Santiago, J.S.C., granted defendant summary judgment and dismissed the complaint. The judge rejected plaintiff's theories of liability. In her oral opinion, the judge concluded that plaintiff had failed to "present evidence that the phone card that caused the slip and fall was present for an unreasonable amount of time," and that therefore "no genuine issue of material fact [existed such that] a rational jury could find for the plaintiff." The judge also declined to extend the principles of mode-of-operation liability to this factual setting.

Rule 4:46-2(c) directs that summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment . . . as a matter of law." The appropriate inquiry must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 533 (1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202, 214 (1986)). The court must review the evidence presented "in the light most favorable to the non-moving party." Id. at 540. On appeal, we review summary judgment orders de novo, utilizing the same standards applied by the trial courts. Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 374 (2010). Applying these principles, we agree that summary judgment was properly granted here.

We concur with Judge Santiago that, even if the record is construed in a light most favorable to plaintiff, there is no genuine issue as to whether defendant had actual or constructive notice of the presence of the discarded phone card on the sidewalk. The absence of such notice is fatal to plaintiff's claims of premises liability. Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003); Brown v. Racquet Club of

Bricktown, 95 N.J. 280, 291 (1984). The mere "[e]xistence of an alleged dangerous condition is not constructive notice of it." Sims v. City of Newark, 244 N.J. Super. 32, 42 (Law Div. 1990).

The record lacks competent proof that defendant failed to exercise due care in the manner in which it maintained the sidewalk outside of its store. We acknowledge that "[t]he proprietor of premises to which the public is invited for business purposes of the proprietor owes a duty of reasonable care to those who enter the premises upon that invitation to provide a reasonably safe place to do that which is within the scope of the invitation." Butler v. Acme Mkts., Inc., 89 N.J. 270, 275 (1982). This duty of care "requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." Nisivoccia, supra, 175 N.J. at 563 (citing O'Shea v. K. Mart Corp., 304 N.J. Super. 489, 492-93 (App. Div. 1997)).

No witnesses or exhibits in the record contradict the store manager's sworn testimony describing the Quick Chek's routine maintenance and trash removal procedures. Those procedures have not been shown by competent evidence to be unreasonable. Moreover, the conclusory statements of plaintiff's expert criticizing those procedures are not grounded in identified

objective standards, and thus must be disregarded as inadmissible net opinion. Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372-73 (2011).

In both the expert's initial report and supplemental report, he presents opinions "from my [meaning, his] experience" without ever stating what that experience is, or explaining how it is reflective of objective standards about convenience store operations or maintenance. Here, as in Pomerantz, plaintiff has failed to show that her expert's opinions were "more than the expert's personal views." Pomerantz, supra, 207 N.J. at 373. The expert alludes to the fact that "[m]any stores" require an hourly "check sheet" for maintenance procedures, but he provides no substantiation for this assertion and does not indicate whether this is the prevailing or common practice in the industry. A net opinion is insufficient to satisfy a plaintiff's burden on a motion for summary judgment. Polzo v. Cnty. of Essex, 196 N.J. 569, 583-84 (2008); Smith v. Estate of Kelly, 343 N.J. Super. 480, 497-98 (App. Div. 2001).

We further agree with Judge Santiago that this is not an appropriate case for the imposition of mode-of-operation liability. In certain distinctive instances, our courts have eliminated a tort plaintiff's requirement of proof of actual or constructive notice where, "as a matter of probability, a

dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents." Nisivoccia, supra, 175 N.J. at 563. In such mode-of-operation cases, the courts "have accorded the plaintiff an inference of negligence, imposing on the defendant the obligation to come forward with rebutting proof that it had taken prudent and reasonable steps to avoid the potential hazard." Id. at 563-64. See also Model Jury Charge (Civil), 5.20F(11), "Notice Not Required When Mode of Operation Creates Danger" (1970).

The Supreme Court's prior reported cases that have allowed mode-of-operation liability have typically involved hazards located inside of a defendant's retail building. For example, in Bozza v. Vornando, Inc., 42 N.J. 355, 358 (1964), the plaintiff was injured after slipping on a slimy substance on the floor of a self-service cafeteria. There, the Court found that there was a "reasonable probability that the dangerous condition would occur" due to the fact that the cafeteria was a "very busy" self-service operation that did not supply lids for its beverage containers, nor require its patrons to use food trays. Id. at 360-61.

Several years later, in Wollerman v. Grand Union Stores, Inc., 47 N.J. 426, 428 (1966), the Court applied the mode-of-

operation rule in a case where the plaintiff was injured after slipping and falling on a loose string bean in the vegetable section of a supermarket. The vegetables were sold "from open bins on a self-service basis," thus creating a likelihood that "some will fall or be dropped to the floor." Id. at 429.

Similarly, in Nisivoccia, supra, 175 N.J. at 561, the plaintiff was injured after slipping and falling on loose grapes approximately three feet from the checkout aisle of a supermarket. The grapes "were displayed in open-top, vented plastic bags that permitted spillage." Ibid. Because the grapes were packaged in open and air-vented bags that "invited spillage," the Court found that "[i]t was foreseeable then that loose grapes would fall to the ground near the checkout area, creating a dangerous condition for an unsuspecting customer walking in that area." Id. at 565.

Our appellate opinions have extended the mode—of-operation doctrine to include self-service businesses other than cafeterias and supermarkets. See, e.g., O'Shea, supra, 304 N.J. Super. at 491-95 (holding that the plaintiff was entitled to an inference of negligence against a self-service store when a golf bag fell from a display, causing a significant facial injury); Craggan v. Ikea USA, 332 N.J. Super. 53, 59, 61-63 (App. Div. 2000) (concluding that a mode—of-operation jury instruction was

proper where the plaintiff had tripped on string provided to customers in the store's loading area so that they could secure their purchases to their vehicles). In Craggan, we noted that a "unifying factor" between these cases and the supermarket cases was "a mode of operation designed to allow the patron to select and remove the merchandise from the premises without intervention from any employee of the storekeeper." Id. at 62.

The present case is dissimilar. The phone card was not found inside defendant's store, but instead was on a sidewalk outside. Unlike the self-service cases where a mode-of-operation theory has been deemed viable, the retail chronology here includes an interaction with a store employee after an item has been taken by a customer from a self-service display. The patron who presumably bought the phone card would have had to take it off the display rack, present it to a cashier at checkout, had the card activated by the cashier, and paid for the card before taking it out of the store. The nexus between the self-service rack and the eventual presence of the card on the sidewalk outside is extremely attenuated.

Furthermore, it cannot be reasonably asserted here that the convenience store's "method of doing business," see Nisivoccia, supra, 175 N.J. at 564, created the hazard encountered by plaintiff on the sidewalk. The transaction between the

purchaser of the phone card and the store was fully concluded at the time of purchase. The purchased item did not have to be prepared for removal from the premises. What the purchaser chose to do with the card after leaving the store was not an integral feature of the store's retail operation. Consequently, there would have been no principled basis to apply the special elements of a mode-of-operation jury instruction here if the case had gone to trial. Instead, ordinary principles of premises liability, including the requirement of actual or constructive notice of a dangerous condition on the sidewalk, would pertain.

Lastly, we also find it significant here that a phone card is not necessarily going to be used and discarded immediately by its purchaser. The card stores a designated amount of calling minutes. Those stored minutes conceivably can be applied to multiple calls, depending upon the length of the calls and the amount of time purchased. Because the card contains such stored value, it is not debris that would invariably be tossed aside when the card purchaser leaves the store. Cf. Kedia v. Brookshire Grocery Co., 752 So. 2d 944, 946-48 (La. Ct. App. 1999) (in which the plaintiff successfully established a grocery store's liability after slipping and injuring herself on a wet promotional leaflet distributed at the store, because the store

A-0967-12T3

management "should have foreseen the possibility that customers would discard [such leaflets] throughout the store").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0967-12T3