NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2853-15T2

KAREN L. LANDERS,

 Plaintiff-Appellant,

v.

MEDFORD FITNESS CENTER,

 Defendant-Respondent,

and

TERM PROPERTY LLC and/or SWEAR
FITNESS,

 Defendants.
___________________________________

 Argued May 16, 2017 – Decided August 17, 2017

 Before Judges Ostrer and Moynihan.

 On appeal from the Superior Court of New
 Jersey, Law Division, Burlington County,
 Docket No. L-1391-14.

 Maria DeTitto argued the cause for appellant
 (Law Offices of Robert I. Segal, attorneys;
 Ms. DeTitto, on the brief).

 Mitchell S. Berman argued the cause for
 respondent.

PER CURIAM
 Plaintiff Karen Landers appeals from the trial court's

summary judgment dismissal of her slip-and-fall complaint.

Plaintiff injured her right wrist and knee when she fell on the

floor of a gym operated by defendant Medford Fitness Center.

Relying on the mode-of-operation doctrine, plaintiff contends that

Medford was liable for the injuries she sustained. In granting

summary judgment, the trial court found the mode-of-operation

doctrine inapplicable and plaintiff failed to demonstrate actual

or constructive notice of a dangerous condition. Having considered

plaintiff's arguments in light of the record and applicable

principles of law, we affirm.

 I.

 The material facts were undisputed. On January 6, 2014,

plaintiff slipped and fell while participating in a Zumba class

at Medford. The week before the accident, Medford had the group

exercise studio floor waxed and re-coated. It was the first time

plaintiff had been in the studio since the floors were redone.

 About fifteen minutes into the class, plaintiff noticed drops

of water on the floor, stopped dancing, and wiped the floor with

a paper towel. She did not know the source of the water, and did

not notify the Zumba instructor who led the class from the front

of the room. She moved a few feet to the left to continue dancing.

Twenty minutes later, plaintiff slipped and fell while performing

 2 A-2853-15T2
a dance routine. At the time, plaintiff was shifting to her left,

when her right foot slipped from under her, causing her to fall

on her right-side, injuring her right wrist and knee. Plaintiff

later claimed the moisture or dampness — as distinct from a puddle

or water drops — caused her fall. She could not identify the

source of the moisture, and did not see anyone spill water or

sweat profusely. Although plaintiff said the floor was "shiny,"

she testified that it did not feel any different than it did before

it was re-coated.

 Colleen Normandin, an eyewitness to the accident, testified

that "the floor was extremely slippery that day" and she believed

the studio floor's condition caused plaintiff to fall. She

described the studio as humid, comparing it to a bathroom after a

hot shower, and opined that the combination of the waxed floor and

the humidity of the studio caused the floor to be slippery.1 She

1
 Normandin also claimed she overheard an unidentified Medford
employee describe the studio as "a skating rink." The trial court
disregarded the statement as inadmissible hearsay. See R. 1:6-
6. We agree. Although the statement was an apparent admission,
the employee was unidentified. Therefore, Medford could not
determine whether the employee's statement was "within the scope
of the agency or employment" when made, N.J.R.E. 803(b)(4), nor
could Medford cross-examine the employee. See Beasley v. Passaic
Cnty., 377 N.J. Super. 585, 603-04 (App. Div. 2005) (holding
inadmissible under N.J.R.E. 803(b)(4) the statement of an
unidentified declarant because it was impossible to determine
whether the statement was within the declarant's scope of
employment, or to cross-examine the alleged declarant); see also
Carden v. Westinghouse Elec. Corp., 850 F.2d 996, 998-1002 (3d

 3 A-2853-15T2
conceded, however, that she did not hear anyone complain to the

instructor about the slippery conditions.

 Maureen Faber, Medford's general manager and co-owner,

testified in deposition that she inspected the group studio after

plaintiff's accident and did not notice any substances or moisture

on the floor. She also testified that, for the month of January

2014, she was not aware of any other incidents in which someone

slipped in the group exercise studio.

 Plaintiff alleged in her complaint that Medford created a

dangerous and hazardous condition, and failed to warn her of the

dangers, which caused her injuries. In its summary judgment

motion, Medford argued that plaintiff failed to prove that it had

actual or constructive notice of the dangerous substance that

caused her fall. Medford also noted that plaintiff failed to

identify the source or moisture that caused her fall. Plaintiff

responded that, based on Medford's mode-of-operation, she was not

required to prove actual or constructive notice.

 In granting summary judgment, Judge Susan L. Claypoole found

that plaintiff failed to establish that Medford's negligence

caused her injuries. Citing Prioleau v. Kentucky Fried Chicken,

Cir. 1988) (concluding that a supervisor's statement to the
plaintiff that "they wanted a younger person" was inadmissible
under Fed. R. Evid. 801(d)(2)(D) because the proponent failed to
"identify the unknown 'they'").

 4 A-2853-15T2
Inc., 223 N.J. 245 (2015), Judge Claypoole concluded the mode-of-

operation doctrine did not apply:

 The Court agrees with the notion that gyms are
 self-service businesses because it is simply
 the nature of how gyms operate. The second
 principle cited by [plaintiff], however, is
 where the argument for Mode-of-Operation as
 the correct analysis fails.

 "[T]he rule applies only to accidents
 occurring in areas affected by the business's
 self-service operations . . . ." Prioleau,
 [supra,] 223 N.J. [at] 262. Here, the
 accident occurred in the group exercise studio
 where [Medford] hosts exercise classes, i.e.,
 there are instructors supervising the classes.
 [Plaintiff] contends that the fact that
 [Medford] keeps exercise balls, dumbbells,
 exercise mats, and weights in the group
 exercise studio makes the area an area
 affected by [Medford's] self-service
 operations, but offers no citation to the
 record to support that such equipment is in
 fact kept in there and that patrons utilize
 the group exercise studio other than when
 classes are occurring.

 Accordingly, the Court concludes that
 actual or constructive knowledge of the
 dangerous condition is the correct analysis,
 not Mode-of-Operation.

The court also found that the record failed to support a finding

of actual or constructive notice of a dangerous condition.

 On appeal, the parties essentially renew the arguments they

presented to the trial court.

 II.

 5 A-2853-15T2
 We review a trial court's grant of summary judgment de novo,

employing the same standard used by the trial court. Henry v.

N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010). Pursuant

to that standard, the trial court shall grant summary judgment if

the evidence "show[s] that there is no genuine issue as to any

material fact challenged and that the moving party is entitled to

a judgment or order as a matter of law." R. 4:46-2(c); see also

Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

 In order to sustain her negligence claim, plaintiff had the

burden to demonstrate four elements: "(1) a duty of care, (2) a

breach of that duty, (3) proximate cause, and (4) actual damages."

Townsend v. Pierre, 221 N.J. 36, 51 (2015) (internal quotation

marks and citation omitted). As this is a premises liability case

and neither party disputes plaintiff's status as an invitee,

Medford owed plaintiff "a duty of reasonable or due care to provide

a safe environment for doing that which is within the scope of the

invitation." Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563

(2003). Specifically, Medford had an affirmative duty "to discover

and eliminate dangerous conditions, to maintain the premises in

safe condition, and to avoid creating conditions that would render

the premises unsafe." Ibid. In asserting a breach of this duty,

plaintiff needed to demonstrate "'that the defendant had actual

or constructive knowledge of the dangerous condition that caused

 6 A-2853-15T2
the accident.'" Prioleau, supra, 223 N.J. at 257 (quoting

Nisivoccia, supra, 175 N.J. at 563).

 The parties' respective burdens change substantially under

the mode-of-operation doctrine, which addresses "circumstances in

which, as a matter of probability, a dangerous condition is likely

to occur as the result of the nature of the business, the

property's condition, or a demonstrable pattern of conduct or

incidents." Nisivoccia, supra, 175 N.J. at 563; see Prioleau,

supra, 223 N.J. at 258. The dangerous condition may arise from

customer negligence, the actions of employees, "or the inherent

qualities of the merchandise itself." Id. at 263. When

applicable, the rule "gives rise to a rebuttable inference that

the defendant is negligent, and obviates the need for the plaintiff

to prove actual or constructive notice." Id. at 258. Instead,

the defendant has the "obligation to come forward with rebutting

proof that it had taken prudent and reasonable steps to avoid the

potential hazard." Nisivoccia, supra, 175 N.J. at 563-64.

 "[T]he mode-of-operation doctrine has never been expanded

beyond the self-service setting, in which customers independently

handle merchandise without the assistance of employees or may come

into direct contact with product displays, shelving, packaging,

and other aspects of the facility that may present a risk."

Prioleau, supra, 223 N.J. at 262; see also Walker v. Costco

 7 A-2853-15T2
Wholesale Warehouse, 445 N.J. Super. 111, 121 (App. Div. 2016)

(recognizing the application of mode-of-operation liability

principles to businesses providing goods through "self-service"

operations). The Court specifically rejected the idea that the

doctrine applied whenever a risk of injury was "inherent in the

nature of the defendant's operation." Prioleau, supra, 223 N.J.

at 264 n.6 (internal quotation marks and citation omitted).

 Furthermore, to invoke the mode-of-operation doctrine, a

plaintiff must prove that the dangerous condition arose from the

business's self-service operation. "The dispositive factor is

. . . whether there is a nexus between self-service components of

the defendant's business and a risk of injury in the area where

the accident occurred." Id. at 262. The doctrine will not apply,

however, where there is no evidence that "the location in which

[the] plaintiff's accident occurred . . . bears the slightest

relationship to any self-service component of [the] defendant's

business." Id. at 264.

 With these principles in mind, we conclude the trial court

properly rejected plaintiff's reliance on the mode-of-operation

doctrine. The record fails to establish a nexus between the

dangerous condition and Medford's mode-of-operation. Even

assuming for argument's sake that Medford operated in some respects

 8 A-2853-15T2
as a self-service business,2 its "self-service components," if so

characterized, would have been limited to activities in which gym

patrons exercised, unsupervised by employees, utilizing Medford's

fitness equipment, such as dumbbells, free-weights, and cardio

equipment. See Prioleau, supra, 223 N.J. at 262 (describing a

self-service operation as one "in which customers independently

handle merchandise without the assistance of employees"); O'Shea

v. K. Mart Corp., 304 N.J. Super. 489, 493 (App. Div. 1997) ("The

absence of sales personnel leads to the inference that [the]

defendant is a self-service store."). However, plaintiff's injury

was sustained during a Zumba class, which does not fall within one

of Medford's self-service components. Notably, she was not using

any merchandise or equipment and, more importantly, she was in the

2
 Extending the mode—of-operation doctrine to health clubs, and
recognizing a rebuttable presumption of negligence, may create
tension with the Court's statement in Stelluti v. Casapenn Enters.,
LLC, 203 N.J. 286, 311 (2010) that health clubs "need not ensure
the safety of its patrons who voluntarily assume some risk by
engaging in strenuous physical activities that have a potential
to result in injuries." The Court added, "Any requirement to so
guarantee a patron's safety from all risk in using equipment,
which understandably is passed from patron to patron, could chill
the establishment of health clubs . . . [which] perform a salutary
purpose by offering activities and equipment so that patrons can
enjoy challenging physical exercise." Ibid. Contrary to
plaintiff's contention that the Zumba classroom should have been
inspected before and during each class, the Supreme Court held "it
would be unreasonable to demand that a fitness center inspect each
individual piece of equipment after every patron's use . . . ."
Ibid.

 9 A-2853-15T2
 3
presence and had the assistance of an instructor. Since

plaintiff's injury did not involve a self-service component, the

mode-of-operation doctrine does not apply.

 We also agree with the trial court that Medford did not have

actual or constructive notice of a dangerous condition.

Constructive notice can be established "when the condition existed

for such a length of time as reasonably to have resulted in

knowledge and correction had the defendant been reasonably

diligent." Troupe v. Burlington Coat Factory Warehouse Corp., 443

N.J. Super. 596, 602 (App. Div. 2016) (internal quotation marks

and citation omitted). "The mere '[e]xistence of an alleged

dangerous condition is not constructive notice of it.'" Arroyo

v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013)

(quoting Sims v. City of Newark, 244 N.J. Super. 32, 42 (Law Div.

1990)).

3
 Plaintiff argues the instructor's presence was inconsequential,
as is a supermarket employee's mere presence in a self-service
produce aisle. See Nisivoccia, supra, 175 N.J. at 561 (the
plaintiff slipped and fell on loose grapes); Wollerman v. Grand
Union Stores, Inc., 47 N.J. 426, 428 (1966) (the plaintiff slipped
and fell on a string bean). We disagree. The instructor actively
guided the class, as would a trainer assisting a gym member in
using exercise equipment, and as distinct from a supermarket
employee who may restock bins, but does not directly interact with
customers. Simply put, the "equitable considerations,"
Nisivoccia, supra, 175 N.J. at 563, that prompted application of
the doctrine when a defendant resorts to a self-service mode-of-
operation do not apply here.

 10 A-2853-15T2
 Here, the record fails to demonstrate that Medford had actual

or constructive notice of a dangerous condition. No competent

evidence was presented establishing the Zumba instructor's, or any

other Medford employee's, awareness of the slippery conditions of

the floor. No testimony was provided that anyone complained,

before the accident, about the slippery conditions, nor was there

any evidence presented that any other patrons had slipped in the

studio.

 Even if the instructor noticed that plaintiff mopped up the

floor and was on notice that there was something wet on the floor,

that, alone, did not provide constructive or actual notice of the

alleged dangerous condition that caused plaintiff's fall. First,

plaintiff apparently toweled off the drops of water. If anything,

this evidence suggests notice of the removal of an alleged

dangerous condition, not its presence. Second, plaintiff moved

to a different location. There is no evidence that the instructor

or anyone else at the gym had actual or constructive notice of the

moisture or dampness at plaintiff's second location. In sum,

"[t]he absence of such notice is fatal to plaintiff's claim[] of

premises liability." Arroyo, supra, 433 N.J. Super. at 243.

 Affirmed.

 11 A-2853-15T2