**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4684-16T3

JAIDEV ANAND and RAGHBIRK
ANAND, h/w,

    Plaintiffs-Appellants,

v.

THE CLUB III AT MATTIX FORGE
CONDOMINIUM ASSOCIATION, INC.,

    Defendant-Respondent.

_____

Argued August 8, 2018 – Decided August 16, 2018

Before Judges Hoffman and Currier.

On appeal from Superior Court of New Jersey,
Law Division, Atlantic County, Docket No. L-
1848-15.

John F. Hanahan argued the cause for
appellants (Rosenbaum & Associates, PC,
attorneys; John F. Hanahan, on the briefs).

Matthew L. Rachmiel argued the cause for
respondents (Methfessel & Werbel, attorneys;
Matthew L. Rachmiel and Jason D. Dominguez,
on the brief).

PER CURIAM

Plaintiffs Jaidev Anand and Raghbirk Anand[1] appeal from a May 18, 2017 Law Division order granting the summary judgment dismissal of their trip-and-fall premises liability action. Defendant, The Club III at Mattix Forge Condominium Association (defendant or Club), owns the condominium complex where plaintiffs reside and the injury occurred. For the reasons that follow, we vacate and remand.

I.

We discern the following facts from the record, viewing the evidence in the light most favorable to plaintiffs, the non-moving parties. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405-06 (2014). This case arises from an accident that occurred at approximately 7:15 p.m. on November 6, 2014, when plaintiff tripped over a concrete curb stop[2] placed at the end of the walkway leading from plaintiffs' condominium to defendant's parking lot.

Around 9:30 a.m. on the day of the accident, plaintiff left his residence for work, and no curb stop was present at the end of the walkway. Plaintiff and his handyman, Juan Diego Carresco,

---

[1]   In this opinion, we refer to Jaidev Anand individually as plaintiff, and Jaidev Anand and Raghbirk Anand collectively as plaintiffs. Raghbirk Anand sues per quod.

[2] An employee of defendant described curb stops as, "bumpers [that] are placed along the edge of . . . parking spaces to discourage people from driving onto . . . front lawns . . . ."

returned to the Club that evening around 7:00 p.m. Carresco parked directly in front of the walkway to plaintiff's condominium. At that point, it was dark and raining heavily, and neither plaintiff nor Carresco recalled seeing any curb stop at the end of the walkway. Plaintiff does not assert that the curb stop was not there, but claims it was completely hidden under Carresco's car as they exited the vehicle. About five to ten minutes later, plaintiff asked Carresco to pick up his wife at a nearby store, and Carresco obliged. Plaintiff remained at home.

After Carresco departed, plaintiff went outside to retrieve his mail, and tripped over the now-present curb stop located where the walkway met the parking lot. He recalled, "[T]here was not enough light, because the light was covered with some kind of branches." Carresco and plaintiff's wife returned to find plaintiff in the condominium injured and bleeding heavily from his face. When plaintiff told them what happened, Carresco went outside and confirmed that a piece of curb stop was at the end of the walkway. Plaintiff recalled that the curb stop he tripped over was "definitely an old one," and confirmed that it was not part of either curb stop situated at the head of the assigned parking spaces in front of his residence.

According to plaintiff, he later went to the hospital, where doctors diagnosed him with "multiple fractures." He underwent

A-4684-16T3

facial surgery and remained in the hospital for several days. When plaintiff and his wife returned home, the curb stop was no longer present at the end of the walkway. However, plaintiffs noticed a similar-looking curb stop located behind the electrical box of a different unit. Plaintiff did not notify defendant of the accident or the misplaced curb stop behind the electrical box before filing suit.

The Club has two employees: Angela Ludwig, the property manager, and Linda Stokes, who oversees maintenance. Ludwig hires contractors to perform any additional work required at the complex. Stokes patrols the property on Monday through Friday from 7:30 a.m. to 3:30 p.m. These patrols include collecting trash discarded on the premises, and otherwise ensuring everything is in order.

All factual assertions about the condition of the curb stops at the Club are undisputed. Plaintiff, who purchased the condominium around thirty years ago, testified he had never seen any other misplaced curb stops on the property, nor had he seen any curb stops moved since they were installed around 1998; however he does recall seeing a few curb stops tilted or lifted up. The testimony of Stokes and Ludwig echo those observations and indicates that occasionally trucks or snow plows will strike curb stops, causing them to lift.

4

According to Ludwig, on occasion she asks Stokes to make sure rebar adequately secures the curb stops. If Stokes alerts her to an unsecure or "loose" curb stop, Ludwig contacts a contractor to secure it. According to Stokes, if she had seen a curb stop at the end of plaintiff's walkway she would have placed warning cones on either side of the hazard and alerted Ludwig, who would have hired a contractor to address the problem. Both employees testified they received no complaints about misplaced curb stops.

Plaintiffs provided a report from a professional engineer regarding the conditions at the Club. His report discussed the dangers of curb stops in general, a recommended standard that they be painted a bright color, and codes requiring pathways to be free from obstructions. He then opined the piece of curb stop that caused plaintiff's injury only had one rebar location, making it unstable, and defendant's inadequate inspection policy or procedure was a contributing factor to plaintiff's accident.

Defendant then moved for summary judgment. Plaintiff opposed the motion, arguing there were genuine issues of material fact as to whether the Club had notice of the misplaced curb stop, and whether defendant breached its duty to provide adequate lighting.

The motion judge granted summary judgment. He found plaintiffs failed to establish when the misplacement of the curb stop occurred, and therefore a reasonable juror could not

reasonably find that the curb stop appeared before the end of Stokes' shift at 3:30 p.m. The judge further found defendant had constructive notice that growing tree branches could create a lighting hazard, but concluded plaintiffs could not establish proximate cause without testimony from a lighting expert.

## II.

In reviewing a grant of summary judgment, we apply the same standard under Rule 4:46-2(c) that governs the trial court. See Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007). We "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). To establish a prima facie case of negligence, a plaintiff must set forth evidence that: (1) defendant owed him or her a duty of care; (2) defendant breached that duty; (3) defendant's breach of duty proximately caused plaintiff damages; and (4) damages. D'Allessandro v. Hartzel, 422 N.J. Super. 575, 579 (App. Div. 2011). Plaintiffs bear "the burden of establishing those elements 'by some competent proof.'" Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Davis, 219 N.J. at 406).

A business proprietor "owes a duty of reasonable care to those who enter the premises . . . to provide a reasonably safe place to do that which is within the scope of the invitation." Butler v. Acme Mkts., Inc., 89 N.J. 270, 275 (1982). "A proprietor generally is not liable for injuries caused by defects of which he [or she] had no actual or implied knowledge or notice, and no reasonable opportunity to discover." Brown v. Racquet Club of Bricktown, 95 N.J. 280, 291 (1984) (citation omitted). Further, "[w]hether a reasonable opportunity to discover a defect existed will depend on both the character and the duration of the defect." Ibid.

III.

A.

On appeal, plaintiff first argues the trial court erred in finding that no reasonable juror could find the Club had actual or constructive knowledge of the misplaced curb stop. Plaintiff maintains that whether the curb stop was moved before or after the end of Stokes' patrol is a question properly left to the jury. We disagree.

In the absence of direct proof, plaintiff must provide circumstantial evidence that could lead to reasonable and legitimate inferences, but mere speculation or loosely tied together allegations will not suffice. See Lewin v. Ohrbach's,

<u>Inc.</u>, 14 N.J. Super 193, 198 (App. Div. 1951). We have held that where employee inspections are routine, they will suffice to establish a timeline, absent contrary evidence. <u>Arroyo v. Durling Realty, LLC</u>, 433 N.J. Super. 238, 243-44 (App. Div. 2013). In <u>Arroyo</u>, a customer at a convenience store fell on a pre-paid phone card located on the outside sidewalk. <u>Id.</u> at 241. The store owner testified it was routine for employees ending their shift to sweep outside, and a shift had just ended shortly before the accident. <u>Ibid.</u> The motion judge granted summary judgment and we affirmed, finding that actual or constructive notice could not be established without competent evidence disproving the store owner's testimony on procedure. <u>Id.</u> at 242-43. We also rejected the opinion of the plaintiff's expert criticizing the store's maintenance and inspection techniques because it was not "grounded in identified objective standards." <u>Id.</u> at 244.

Here, the court properly found a reasonable juror could not conclude from the facts at hand that defendant had actual or constructive knowledge of the misplaced curb stop. Plaintiff has not provided sufficient evidence to demonstrate that the misplaced curb stop appeared before 3:30 p.m. Like the store owner in <u>Arroyo</u>, defendant has established routine checks through Stokes' daily patrols. Both Ludwig and Stokes testified that Stokes patrols the property from 7:30 a.m. to 3:30 p.m., Monday through

A-4684-16T3

Friday. Plaintiff's accident occurred on a Thursday and therefore one could reasonably assume Stokes patrolled the property during those hours. Plaintiffs offer no competent proof in the record to dispute defendant's assertion that Stokes had patrolled during the day of the accident, only arguing that the main priority of Stokes' patrols was picking up trash. Plaintiffs' argument lacks persuasion. We therefore affirm the motion court's determination that defendant did not have constructive notice of the misplaced curb stop prior to plaintiff's accident.

B.

Plaintiffs further contend the trial court erred by rejecting their claim of insufficient lighting, based on its conclusion "that an average juror could not evaluate the lighting situation without the testimony of an expert." On this point, we agree with plaintiffs.

"The test of need of expert testimony is whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the party was reasonable." Butler, 89 N.J. at 283 (citation omitted). Whether an expert witness is required does not depend on whether there are relevant codes or regulations, but whether the situation warrants it. Scully v. Fitzgerald, 179 N.J. 114, 127 (2004) ("A jury does not need a fire expert to explain to it

the dangers that might follow when a lit cigarette is thrown into a pile of papers or other flammable material.").

In Webb v. Betta, 7 N.J. Super. 60 (App. Div. 1950), we reversed the dismissal of the plaintiff's complaint on the basis that she had not established the landlord's failure to illuminate a staircase constituted negligent conduct that caused her injury. Id. at 62. Specifically, the plaintiff testified she was descending the staircase in darkness while holding the banister, and misstepped. Id. at 61. Although the defendant did not dispute that his failure to light the stairway was a statutory violation and evidence supporting negligence, the judge found the plaintiff's testimony had not established "any proximate causal relation between the absence of the light and the fall." Id. at 61-62.

We rejected that ruling, finding it "fairly inferable" from the circumstances that the defendant's failure to provide light constituted negligence that proximately caused plaintiff to fall. Id. at 62. We concluded, "the jury was entitled to draw legitimate, probable inferences that [the plaintiff] misstepped because she could not see the next step on account of the darkness." Ibid. (internal quotation marks and citation omitted). We further dismissed suggestions that the plaintiff might have become dizzy or that her hand might have slipped off the rail,

finding the record failed to support such happenings, and declining to assign the plaintiff a burden to negate possibilities the testimony did not suggest. Ibid.

Here, defendant argues an expert is required to testify to the standard of care established in the outdoor lighting ordinance of the Township of Galloway, the municipality where plaintiff's accident occurred. We disagree. The Township of Galloway's outdoor lighting code provides, "[s]treetlights shall be provided at all road intersections, street curves and culs-de-sac as deemed necessary by the approving authority for the protection of health, safety and welfare." Galloway Twp., N.J., Outdoor Lighting Ordinance § 233-17.2(E)(1) (2003). However, plaintiffs did not assert a violation of any lighting code or statute. Plaintiffs simply allege the lighting was inadequate on the evening of plaintiff's accident because tree branches obstructed the light in the area where plaintiff tripped and fell.

The record clearly shows defendant was aware of the potential danger of tree branches obstructing street lights in its parking lot, as the following exchange at Ludwig's deposition confirms:

> Q: Do you as the Property Manager make any attempts at maintaining the trees around the light posts?
>
> A: Yes.
>
> Q: And what do you do about that?

A-4684-16T3

A:  I call The Tree Man and he comes out and cuts all the branches that are covering all the lights.

. . . .

A:  And it's also a safety issue, that's why we do it.

Q:  What do you mean by that?

A:  In other words, when the lights are all covered, and it gets kind of dark, then, you know, especially at night, you can't see and that's why we always have the trees trimmed.

In this case, we conclude plaintiffs' claim that obstructive foliage caused inadequate lighting constitutes a clear and comprehensible claim that is not beyond the scope of the average juror. Given that the judge correctly determined "the growth of branches would have developed over sufficient time to have put [d]efendant on constructive notice" as to the obstruction of light due to tree growth, we conclude there remains a genuine issue of material fact as to whether defendant breached its duty to provide adequate lighting. Therefore, summary judgment on this issue was not appropriate. We find the record sufficient to create an issue of fact for the jury to resolve as to this issue.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4684-16T3