**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4160-17T4

BETTY PROMISE,

     Plaintiff-Appellant,

v.

KHUBANI ENTERPRISES, INC.,
CACO MANUFACTURING
CORPORATION, and MAC GRAY
SERVICES, INC.,

     Defendants-Respondents.

_____

          Submitted October 10, 2019 – Decided November 27, 2019

          Before Judges Koblitz and Whipple.

          On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-4506-16.

          Fusco & Macaluso Partners, LLC, attorneys for appellant (Kevin Clarence Decie, on the brief).

          Lewis Brisbois Bisgaard & Smith, LLP, attorneys for respondent Khubani Enterprises, Inc. (Colin P. Hackett and Afsha Noran, of counsel and on the brief).

Marks, O'Neill, O'Brien, Doherty & Kelly, PC, attorneys for respondent Caco Manufacturing Corp. (Melissa Jennifer Brown, on the brief).

Litchfield Cavo, LLP, attorneys for respondent Mac Gray Services, Inc. (Tobin Alan Butler and Zachary E. Danner, on the brief).

PER CURIAM

Plaintiff appeals from an April 13, 2018 order granting defendant Khubani Enterprises, Inc.'s (Khubani) motion for summary judgment. We affirm.

We have gleaned the following facts from our review of the record. In July 2014, plaintiff Betty Promise was sitting in a chair in the basement laundry room of her apartment building for about thirty minutes when a leg on the chair gave way. The building was owned by defendant Khubani, and the laundry machines and the chairs in the room were installed and maintained by defendant Mac Gray Services (Mac Gray).

The chair was part of a set of chairs that were connected to each other, and plaintiff was sitting on an end chair. Plaintiff described the leg as having "collapsed," and asserts she was caught between the chair she was sitting on and the chair connected to it on her right, after which she then fell onto the floor. At the time of the incident, plaintiff was alone in the laundry room and could not get up by pushing with both hands, so she called out for help. Eventually, two

employees of Khubani, Luis Osuva and Sean, came to help her up and laid her on a table, after which her grandson came to help her upstairs to her apartment. Osuva was responsible for maintenance work in the building. Plaintiff suffered injuries to her shoulder, arm, neck, back, and knees.

Plaintiff's family members took photos of the chair shortly after the incident and gave them to her attorney. On August 6, 2014, plaintiff's attorney sent a letter to Khubani advising that he was representing plaintiff and asking that they "[k]indly preserve the chair in question as it is evidence in this case." For reasons unknown, Khubani did not preserve the chair.

On September 16, 2014, while the chair was still in Khubani's possession, a man who identified himself to Osuva as an attorney for Khubani came to take photos of the chair. There are also photos of the subject chair dated February 10, 2015, but Osuva did not know if the chair was still in the office at that time, and did not recall the last time he saw it. Osuva did not remember seeing the chair after the first photos were taken in September 2014, and stated he did not know where the chair was moved too.

Sometime in 2016, the chairs in the laundry room were replaced with new ones by Mac Gray. Also at some point, the parties realized the subject chair was missing. Khubani concedes the chair went missing while in its possession.

3

On June 29, 2016, plaintiff filed a complaint against Khubani and Caco Manufacturing Corp. (Caco) for negligence in manufacturing the chair and maintaining the premises. On or about February 15, 2017, plaintiff filed an amended complaint adding Mac Gray.

Osuva identified a chair in a photo presented to him at his deposition as the chair on which he found plaintiff sitting. Osuva responded in the affirmative, when asked by counsel for Caco whether he observed "the left leg of the chair . . . bent inwards but . . . not collapsed entirely to the ground," as depicted in the photo. Osuva testified that directly after the incident, he took the chair and put it in the office right next to the laundry room. While he was carrying it, he saw that it was "a little bent."

During the deposition, Osuva testified a Khubani employee named Sean cleaned the chairs and table in the laundry room every morning. Osuva was also responsible for cleaning the laundry room and did not notice any issues or receive any complaints about the chair prior to the incident. Neither did plaintiff notice any problems with the chair during the thirty minutes she sat on the chair before the leg gave way, such as moving or shifting. She also stated in her deposition that she never sat in those particular chairs before, but she had seen

other people sitting in them and did not know of any problems with the chairs prior to her incident.

Discovery concluded in February 2018. It is not apparent from the record if or when plaintiff attempted to examine the chair or have an expert do so. In March 2018, Caco[1], Khubani and Mac Gray each moved for summary judgment. In April 2018, oral argument was heard on summary judgment motions from Khubani and Mac Gray, although plaintiff only opposed the motion as to Khubani, arguing that the fact the chair was "destroyed or otherwise disposed of by defendants" would allow an adverse inference under spoliation, leaving questions of fact for a jury.

The trial judge granted summary judgment to Khubani and Mac Gray on April 13, 2018, after finding that, while plaintiff presented a sufficient argument for spoliation, the destruction of the chair was only relevant to a product liability claim on the part of the manufacturers, and neither Khubani nor Mac Gray were the designer or manufacturer of the chair. The trial judge noted that defendants were a property owner and a maintenance company, respectively, and that as such, plaintiff was required to show evidence that either Khubani or Mac Gray either actually or constructively knew or should have known that the chair

---

[1] Caco was granted summary judgment on March, 2018 in a separate order.

A-4160-17T4

placed on the premises was defective. The trial judge found plaintiff produced no evidence sufficient for a reasonable trier of fact to find negligence on the part of Khubani or Mac Gray.

Plaintiff appealed only as to defendant Khubani. On appeal she argues the spoliation of the chair that caused the injury raises an inference sufficient to preclude summary judgment. We disagree.

We use the same standard for summary judgment as the trial court. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (citations omitted). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The evidence must be viewed in "the light most favorable to the non-moving party." Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012) (citation omitted).

If the case "presents no material factual disputes, the court simply applies the appropriate law to the facts." Kopin v. Orange Prods., Inc., 297 N.J. Super. 353, 366 (App. Div. 1997) (citation omitted). In reviewing a trial court's application of the law, the "trial judge's interpretation of the law and the legal

A-4160-17T4

consequences that flow from established facts are not entitled to any special deference." State ex rel. S.B., 333 N.J. Super. 236, 241 (App. Div. 2000) (citing Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995)).

There are different remedies for spoliation of evidence depending in part on the timing of the discovery of the spoliation. Robertet Flavors, Inc. v. Tri-Form Const., Inc., 203 N.J. 252, 273-74 (2010). When spoliation is discovered in time for the underlying litigation, remedies include a "spoliation inference," which "allows a jury in the underlying case to presume that the evidence the spoliator destroyed or otherwise concealed would have been unfavorable to him or her." Rosenblit v. Zimmerman, 166 N.J. 391, 401-02 (2001) (citations omitted). Additionally, a wronged plaintiff may be permitted to amend the complaint to add a fraudulent concealment count. If that count is added, the

> counts will require bifurcation because the fraudulent concealment remedy depends on the jury's assessment of the underlying cause of action. In that instance, after the jury has returned a verdict in the bifurcated underlying action, it will be required to determine whether the elements of the tort of fraudulent concealment have been established, and, if so, whether damages are warranted.
>
> [Id. at 407-08 (emphasis added).]

Where the spoliation is not discovered in time for the underlying action, a plaintiff may file a separate tort action where he or she is required to establish

the elements of fraudulent concealment, and "[t]o do so, the fundamentals of the underlying litigation will also require exposition." Id. at 408. To make a claim of fraudulent concealment, a plaintiff must show:

> (1) [t]hat defendant in the fraudulent concealment action had a legal obligation to disclose evidence in connection with an existing or pending litigation; (2) [t]hat the evidence was material to the litigation; (3) [t]hat plaintiff could not reasonably have obtained access to the evidence from another source; (4) [t]hat defendant intentionally withheld, altered or destroyed the evidence with purpose to disrupt the litigation; [and] (5) [t]hat plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed.
>
> [Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81, 118 (2008) (citing Rosenblit, 197 N.J. at 406-07).]

Here, the spoliation of the missing chair was discovered during the underlying litigation. Plaintiff may have been entitled to a spoliation inference where a jury would have been permitted to assume the chair was somehow defective. But, because plaintiff only appeals the summary judgment order as to Khubani, the property owner, any adverse inference about the chair would have to be considered in the context of a premises liability/negligence claim.

For the purposes of a negligence claim, "the landlord of a multiple-family dwelling is subject to the same basic duty as an owner or occupant of commercial property. . . ." Drazin, N.J. Premises Liability, § 5:2-2 (2019) (citations

omitted). An owner of a business property has a duty of care to "discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013) (quoting Butler v. Acme Mkts., Inc., 89 N.J. 270, 275 (1982)). If a plaintiff cannot show that an owner of a business property had actual or constructive notice of a dangerous condition, "[t]he absence of such notice is fatal to plaintiff's claims of premises liability." Ibid. (citations omitted).

Our review of the record reveals no evidence Khubani had actual or constructive notice of a defective chair in the laundry room. Rather, the record contains testimony that the chairs were cleaned every morning by a Khubani employee, and nothing in the record indicates the employee ever noticed a problem with the chairs or reported a problem with the chairs to Khubani. Further, plaintiff herself had seen others sitting in the chairs with no issues, and did not notice anything out of the ordinary during the thirty minutes she sat in the chairs. Therefore, any factual dispute that could arise out of any possible adverse inferences regarding the chair, considered in the light most favorable to plaintiff, does not alter the conclusion that she did not demonstrate Khubani had

A-4160-17T4

actual or constructive notice of a prior problem with the chair. Therefore, summary judgment was appropriate as a matter of law.

Additionally, even assuming arguendo, that plaintiff amended her complaint to add a count of fraudulent concealment, the claim would undoubtedly fail as, pursuant to Rosenblit, the trial would have to be bifurcated and the jury would have had to return a verdict in the underlying action before considering the elements of fraudulent concealment. Stated differently, because there was no evidence of Khubani's notice in the underlying premises liability claim, and summary judgment was appropriate as a matter of law, there would be no underlying claim to be tried first, therefore, the court would never reach the claim of fraudulent concealment.[2]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] Further, even if plaintiff's action were to survive the fraudulent concealment claim, she would have to establish the five elements as set out in Tartaglia and Rosenblit. Assuming 1) Khubani had a duty to preserve the chair in connection with impending litigation, and 2) the chair was material to the litigation, nothing in the record suggests that 3) plaintiff could not reasonably have obtained access to the evidence from another source, that 4) Khubani intentionally disposed of the chair with the purpose to disrupt the litigation, or that 5) plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed. See Tartaglia, 197 N.J. at 118 (quoting Rosenblit, 166 N.J. at 406-07).

A-4160-17T4