**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0198-20

ALICJA JACHNA,

     Plaintiff-Appellant,

v.

MACY'S INC., d/b/a
BLOOMINGDALE'S, and
SCHINDLER ELEVATOR
CORPORATION,

     Defendants-Respondents.

_____

     Submitted May 25, 2021 — Decided June 25, 2021

     Before Judges Haas and Mawla.

     On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-2511-19.

     Amy L. Peterson, attorney for appellant.

     McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys for respondents (Edward DePascale, of counsel; Diana M. Hendry, on the brief).

PER CURIAM

Plaintiff Alicja Jachna appeals from a September 1, 2020 order granting summary judgment to defendants, Bloomingdale's, Inc. and Schindler Elevator Corporation[1] dismissing plaintiff's complaint. We affirm.

In April 2019, plaintiff filed a complaint in the Law Division alleging she slipped and fell down an escalator in Bloomingdale's at the Short Hills Mall on November 8, 2017. Plaintiff amended the complaint one month later and alleged defendants' "negligence, carelessness and recklessness" in failing to maintain a "dangerous, hazardous, trap-like condition" on their property, specifically a "defective escalator," caused her to fall and suffer her various injuries.

The parties exchanged discovery, including answers to interrogatories, and conducted depositions of plaintiff and the Schindler Elevator mechanic who last serviced the escalator plaintiff was riding when she fell.[2] Pursuant to the exchange of written discovery, defendants produced a Bloomingdale's internal incident report prepared by a Bloomingdale's employee who arrived after the fall and noticed plaintiff was bleeding and had cuts on her head and lower leg.

---

[1] Bloomingdale's was defended in this matter under the insurance agreement of Schindler.

[2] Although plaintiff has included the parties' answers to interrogatories and the mechanic's deposition transcript in her appellate appendix, she did not provide them to the motion judge. We do not consider evidence that was not provided to the trial court in the first instance. R. 2:5-4(a).

A-0198-20

The employee noted plaintiff "seemed very startled" and "due to her age[3], accent, and the level of injury," it "was challenging to retrieve information . . . ." Another Bloomingdale's employee told the reporting employee "the customer was on her phone during the time of the accident."

At her deposition, plaintiff provided the following testimony. Prior to the accident, she shopped at the Short Hills Mall approximately three times per week. On the date of the incident, she arrived at Bloomingdale's around 1:00 p.m., browsed for approximately three hours, and bought a few things. She wore shoes with "[a] very small" heel. That day, she used the escalators in Bloomingdale's "twice[ or] three times" and did not have "any problems using any of [the] escalators before the one on which [the] accident happened[.]" Her accident occurred during her fourth trip on her way down the escalator at approximately 4:30 p.m.

Plaintiff testified there were a "few" other shoppers on the escalator at the time and the entrance platform was well lit. When she got onto the escalator, she carried "[t]wo very light shopping bags and [her] pocketbook" in her left hand, and her right hand was free. She denied using her phone to either speak or text before boarding the escalator and stated the moment she stepped onto the

---

[3] Plaintiff was eighty years old at the time of the accident.

A-0198-20

first escalator step, she slipped on "something slippery . . . on the step[,] . . . tumbled [and] hit every part of [her] body" including her head and her legs on the "sharp" edges. Plaintiff was taken to the hospital and treated for her injuries.

Plaintiff's medical records revealed she had fallen six months prior to the accident. Defendants' counsel asked her about the fall, but she could not remember what happened. Plaintiff also admitted she was previously diagnosed with macular degeneration, but stated she can "still drive [and] . . . read [with the help of reading glasses]." Plaintiff testified she does not have prescription glasses and does not need glasses to walk or drive.

In July 2020, two months after the discovery end date, defendants filed a motion for summary judgment. Plaintiff opposed the summary judgment motion and filed a cross-motion to extend discovery.

Defendants' summary judgment motion included a statement of material facts, which among other assertions stated plaintiff provided neither a curriculum vitae of any proposed experts nor "any written narrative reports by any identified expert witnesses." Plaintiff's opposition to summary judgment argued "there still remain[ed] questions of material fact which the jury should determine." However, plaintiff's counterstatement of material facts admitted every fact in defendants' statement of material facts. Plaintiff's opposition

4

included a certification from her attorney, which attached a letter dated August 13, 2020, addressed to defendants' counsel amending her interrogatories to include a six-page expert report dated August 12, 2020, and the expert's curriculum vitae.

The expert report was prepared by a senior consultant for an elevator and escalator consulting firm. The expert explained he examined Schindler's records "of emergency repairs," the Bloomingdale's incident report, the depositions of plaintiff and the Schindler mechanic, the emergency medical squad report, a video of the accident, and interrogatory answers. The report claimed "the video shows clearly that [plaintiff] was holding the right handrail" and "not . . . holding a cell phone" and as plaintiff stepped onto the escalator, "she was forcibly thrown to the metal surface of the escalator steps and tumbled down the escalator." The expert's report also stated:

> Escalator handrails are driven by friction and this friction is created by running the interior of the handrail against a rubber or synthetic rubber type material bonded to a device known as a handrail drive sheave. This model of escalator, appears from the video to be an older Otis unit, this will be confirmed when an on-site examination can be conducted.
>
> The maintenance of proper friction is essential in assuring that the handrails run at approximately the same speed as the moving steps. When proper friction is lost due to improper maintenance or lack thereof the

5

handrail will stall momentarily while the steps will continue to move. This escalator has a rated speed of [ninety] feet per minute meaning that the steps move at a speed of one and one-half feet per second. When a passenger, using an escalator in a proper manner is holding the handrail and a stall occurs the passenger will fall since the step will continue to move forward.

A fall can also occur when excess oil from the step chains is deposited onto the steps. This is referred to in the trade a "sling off["] and the oil or other lubricant is deposited on the steps creating a slipping hazard. Again, this is prevented by diligent preventive maintenance.

A fall can also be caused when the side of a passenger[']s shoe becomes entrapped between the moving steps and the stationary side skirt panel or between the step and the channel into which the defector brush is mounted.

Noting he lacked Schindler's maintenance records and "records from Bloomingdale's ownership/management," the expert nonetheless opined as follows:

It is my opinion, to a reasonable degree of certainty within my field of expertise, that this accident in all probability occurred due to the escalator handrail stalling, the presence of a slippery material on the steps[,] or the entrapment of the [p]laintiff's shoe between the step and side panel or deflector brush channel.[]

The various components of the handrail drive system are all subject to routine maintenance and failure of the handrail to move at approximately the

6

same speed as the escalator steps is a clear indication of negligent preventive maintenance and a violation of the ANSI/ASME A17.1 Code for Elevators and Escalators.

The presence of a slippery substance caused by sling off is preventable by diligent maintenance and no use of excess lubricant.

The entrapment of a shoe at either the [s]pace between th[e] step and side panel or the deflector brush channel is, again a function of proper maintenance and adjustment.

I am also of the opinion, to a reasonable degree of certainty within my field of expertise that Schindler failed to document its maintenance and as such violated its own record keeping standards which require documentation of all maintenance and repairs in a machine room logbook.

It is my further opinion, to a reasonable degree of certainty within my field of expertise that Bloomingdale's failed to exercise reasonable care in assuring that the escalator was being properly maintained and by failing to document any inspections by their personnel to verify that the escalator was running properly. In connection with previous escalator cases I have reviewed, the procedures utilized by mall store operators including Sears and J.C. Penney's and the prevailing industry standard is visual inspection of each escalator every two to four hours to determine if they are operating properly. When a defect is found the standard procedure is to notify the escalator maintenance contractor and if the defect presents a hazard to passengers to remove the escalator from service until proper repairs have been accomplished. I have not reviewed any testimony or document to verify

7

if Bloomingdale's utilized any procedures to assure passenger safety nor any reports or logs documenting routine visual inspection of the escalator in question.

It is my further opinion, to a reasonable degree of certainty within my field of expertise that the [p]laintiff was using the escalator in a proper manner and did not cause or contribute in any manner to the accident.

It is my further opinion, to a reasonable degree of certainty within my field of expertise that this type of accident does not occur on a properly maintained escalator absent negligence in it[]s repair and maintenance.

It is my further opinion, to a reasonable degree of certainty within my field of expertise that the [d]efendant[]s were in exclusive control of the escalator at the time of the accident.

The initial discovery end date was April 5, 2020. However, on March 30, 2020, plaintiff, with defendants' consent, requested an extension of discovery, which the court granted to June 4, 2020. Plaintiff's cross-motion in response to defendants' summary judgment motion sought another extension to November 13, 2020, "due to the [COVID]-19 pandemic." Plaintiff's counsel certified that "[a]s a result of the COVID-19 pandemic our expert's report was not completed . . . [and on May 22, 2020, she] sent an email to defense counsel requesting his consent to extend discovery because [the parties] had not exchanged expert

liability reports, which was never replied to by the . . . defendant[s]." Counsel further certified her expert had not "examine[d] the actual premises . . . ."

Citing a "Supreme Court Order of March 17, 2020[,] 'relaxing' the [d]iscovery [e]nd [d]ates of [c]ivil matters . . . , [p]laintiff request[ed] an extension so as to permit the current [expert] report to be provided to the defendant[s]." She also referenced the Supreme Court's order "relax[ing] and supplement[ing] Rule] 4:24-1[(c)] to allow counsel to request an extension without meeting the rule's requirements from March 16, 2020[,] through May 10, 2020[,]" and "authoriz[ing c]ourts to suspend proceedings or extend discovery or other deadlines in the interest of justice" due to the pandemic emergency.

In their opposition, defendants noted the expert discovery was immaterial because in her deposition, "[p]laintiff did not mention her shoe being caught on anything on the escalator" or "any handrail malfunction" as the expert opined. Further, defense counsel certified "[a]ll of defendants' written discovery was served in August of 2019[,]" and "[p]laintiff did not demand more specific answers to interrogatories nor did she serve a notice to produce prior to the close of discovery." Defense counsel also noted plaintiff did not submit the expert

9

report, seek dates to inspect the site, or move to extend discovery prior to the June 4, 2020 discovery end date.

The motion judge made the following findings:

> [The] discovery end date in this case was June 4[], 2020. Until now, there's been no explanation as to why[, . . . given] the fact it is past the discovery end date[,] that there is a necessity [pursuant to] the strict rules [to] reopen[] and extend[] discovery.
>
> Having said that, . . . there's nothing that the [c]ourt has been provided to suggest that any additional discovery will affect the fact that the there is no genuine issue of material fact presented.

The judge further noted the parties had already attended mandatory arbitration pursuant to Rule 4:21A-1(a)(2) and plaintiff had not demonstrated the exceptional circumstances required under Rule 4:24-1(c) necessary to reopen and extend discovery.

The judge made the following findings regarding the summary judgment motion:

> [P]ursuant to [Rule 4:46-2], the [c]ourt should grant summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavit, if any, show there is no genuine issue as to material facts challenged and that the moving party is entitled to judgment or order as a matter of law." [Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995)].

A-0198-20

To sustain any ordinary negligence, the plaintiff must prove, one, a duty of care; two, a breach of that duty; three, actual and proximate causation; and four, damages. [Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014)].

. . . [B]ecause plaintiff was a business invitee, Bloomingdale's owed . . . the duty of reasonable care and [to] provide a reasonably safe place to do that which is within the scope of the invitation. [O'Shea v. K Mart Corp., 304 N.J. Super. 489, 492 (App. Div. 1997)].

The scope of this duty puts an obligation to "discover and eliminate dangerous conditions, [to] maintain the premises in a safe condition, and [to] avoid creating conditions that would render the premises unsafe.[" Prioleau v. Kentucky Fried Chicken, Inc., 434 N.J. Super. 558, 570 (App. Div. 2014), rev'd on other grounds, 223 N.J. 245 (2015)]. . . .

However, an accident does not establish a dangerous condition. Conjecture or guessing does not create a liability by the negligence and can be drawn only from and through its facts. Plaintiff must prove that a defendant had actual or constructive knowledge of a dangerous condition. Constructive knowledge exists if the dangerous condition existed for such a length of time that the property owner or merchant should have known of its presence.

And, last, there are now exceptions to the notice requirement. . . . "[Notice, actual or constructive, of a dangerous condition is] . . . not required [when] the shopkeeper, through acts of its agents or patrons[,] creates a dangerous condition.[" Craggan v. Ikea United States, 332 N.J. Super. 53, 61 (App. Div. 2000)]. . . . [T]he Mode of Operations Doctrine applies when

11

"as a matter of probability, [a] dangerous condition[ is] likely to occur as the result of the nature of the business, the property's condition[,] or [a] demonstrable pattern of conduct or incidents." [Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003)].

. . . "The burden imposed on plaintiff's invitee[ is] substantial[ly] altered [in settings in which the mode-of-operation rule applies]. The rule gives rise to a rebuttable inference that the defendant is negligent[,] and obviates the need for the plaintiff to prove actual or constructive notice." [Prioleau, 223 N.J. at 258]. The Mode of Operation rule is generally related to self-service businesses.

In addition, the [d]octrine of [r]es [ipsa] [l]oquitur reduces a plaintiff's burden of proof through reliance on circumstantial evidence. To prove the res ipsa case, the plaintiff must show []one, that the accident which produced a person's injury ordinarily does not happen unless someone was negligent. [Jimenez v. GNOC Corp., 286 N.J. Super. 533, 543-44 (App. Div. 1996).] Two, the instrumentality o[r] agent who caused the accident was under the exclusive control of the defendant. [Ibid.] And, three, ["]the circumstances indicated that the untoward event was not caused or contributed to by any act or negligence o[n] the part of the injured person." [Ibid. (quoting Eaton v. Eaton, 119 N.J. 628, 638 (1990))].

Here, plaintiff fails to offer evidence that Bloomingdale's had actual or [constructive] notice of the alleged injury-causing substance. There's no evidence to suggest how long the substance existed, it's nature or [that an] employee observed the substance on the escalator. Plaintiff's broad suggestion that there's a genuine issue of material fact regarding the accident is [insufficient] to prevent summary judgment. Plaintiff

12

had not pointed to the specific facts in dispute related to her accident.

Thus, the next level of analysis is whether there [is] . . . the rule exception. The [c]ourt rules there is not. There's nothing in the record to suggest that a Bloomingdale's employee caused the accident. The only evidence [is] that an accident at this time — happened at Bloomingdale's course of business. Therefore, the Mode of Operations rule is irrelevant.

As to the res ipsa argument, plaintiff is not entitled to bring her case to a jury under res ipsa any time there is an unexplained accident for which a defendant might "plausibly be responsible." Rather, it's the plaintiff's obligation to produce evidence that reduces the likelihood of other — so that the greater probability falls on the defendant[]s —.

Here, plaintiff has not offered any proof to undermine the suggestion [that] she fell on her own accord or another patron dropped the substance on the escalator. Instead, the plaintiff relies solely on the user itself to suggest it would not have occurred without negligence. That is a legally insufficient argument. [See Dombrowska v. Kresge-Newark, Inc., 75 N.J. Super. 271, 275 (App. Div. 1962)] . . . [(]ruling that res ipsa was inapplicable where a plaintiff offered uncorroborated evidence that she felt a jerk and fell down an escalator[)]. Finally, the [c]ourt agrees with defendants that there's no evidence that the escalator itself was deficient. . . .

For all of the foregoing reasons as already cited as well as argument of counsel, defendant[s'] motion for summary judgment is granted. The plaintiff's cross-motion to extend discovery is denied.

13

I.

"We generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law." Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div. 2005) (citations omitted).

We review of a ruling on summary judgment de novo, applying the same legal standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017) (citations omitted). We consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill, 142 N.J. at 536).

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)). "An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the

14

parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." R. 4:46-2(c).

## II.

We first address plaintiff's arguments related to the motion judge's denial of her motion to extend discovery. Plaintiff argues the judge erred because he failed to consider discovery was delayed due to the pandemic related Supreme Court orders and that the malls were closed by executive order, which prevented the escalator from being inspected.[4] She notes discovery was only extended once and defendants would suffer no prejudice if the court reopened discovery to enable her to obtain the repair records for the escalator and a site inspection.

Rule 4:24-1(c) states: "No extension of the discovery period may be permitted after an arbitration or trial date is fixed, unless exceptional circumstances are shown." See also Bender v. Adelson, 187 N.J. 411, 426 (2006). In order to establish exceptional circumstances,

> the moving party must satisfy four inquiries: (1) why discovery has not been completed within time and counsel's diligence in pursuing discovery during that

---

[4] Although defendants argue plaintiff has improperly supplemented the appellate record with copies of the Executive and Supreme Court pandemic related orders, the certification filed in support of her motion referenced the pandemic related orders, and the orders are subject to judicial notice. N.J.R.E. 201(a).

time; (2) the additional discovery or disclosure sought is essential; (3) an explanation for counsel's failure to request an extension of the time for discovery within the original time period; and (4) the circumstances presented were clearly beyond the control of the attorney and litigant seeking the extension of time.

[Rivers, 378 N.J. Super. at 79 (citations omitted).]

The record lacks evidence plaintiff acted with diligence in pursuing the discovery and we are unconvinced this required the court to extend the discovery end date. She did not file a motion to extend discovery until after the discovery end date and she failed to explain why. The record does not evince any effort by plaintiff to schedule a site inspection, serve expert reports or a notice to produce, or demand more specific answers to interrogatories, prior to the discovery end date. The mall closure due to the pandemic was not the cause of plaintiff's failure to obtain discovery because depositions concluded on October 29, 2019, and the mall was not closed by executive order until March 21, 2020. Exec. Order No. 107 (March 21, 2020), 52 N.J.R. 554(a) (Apr. 6, 2020).

We also reject plaintiff's arguments that the omnibus orders issued by the Supreme Court during the pandemic permitted her to ignore the discovery end date and to seek to re-open discovery at will. Indeed, beginning with its first order dated March 27, 2020, the Supreme Court ordered as follows: "The time periods for discovery, including but not limited to interrogatories (Rule 4:17),

discovery and inspection of documents and property (Rule 4:18), . . . will be extended from March 16 through April 26, 2020[.]" COVID-19—First Omnibus Order on Court Operations and Legal Practice para. 3 (Mar. 27, 2020). The Court entered a second omnibus order dated April 24, 2020, further extending discovery deadlines to May 10, 2020. COVID-19—Second Omnibus Order on Court Operations and Legal Practice para. 3 (Apr. 24, 2020). However, the Court's third omnibus order issued May 28, 2020, stated the provisions extending civil discovery deadlines and pretrial discovery in civil matters had concluded. COVID-19—Third Omnibus Order on Court Operations and Legal Practice para. 3 (May 28, 2020). The Court's subsequent omnibus orders entered on June 11, 25, July 9, July 24, and September 17, 2020 did not further extend discovery end dates in civil cases. Furthermore, the Supreme Court's orders extended discovery periods, but neither suspended discovery nor addressed re-opening of discovery which had already closed.

Plaintiff failed to meet Rivers factors one, three, and four and did not prove the exceptional circumstances necessary to extend discovery. For these reasons, the trial judge did not abuse his discretion.

17

III.

A.

Plaintiff argues summary judgment was improperly granted because there were material factual disputes. She asserts the motion judge erred because he disregarded the need to complete outstanding discovery because mall security footage showed her falling despite holding onto the escalator handrail. She argues "[a]n inspection may well have revealed issues with the speed of the escalator treads and/or moving handrail" or "supported or refuted the notion that the escalator's history of mechanical failures, including one on the day prior to the accident, could have contributed to the fall."

As a general proposition, "summary judgment is inappropriate prior to the completion of discovery." Wellington v. Est. of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003). However,

> [a] party challenging a motion for summary judgment on grounds that discovery is as yet incomplete must show that "there is a likelihood that further discovery would supply . . . necessary information" to establish a missing element in the case. The party must show, with some specificity, the nature of the discovery sought and its materiality to the issues at hand.

A-0198-20

[Mohamed v. Iglesia Evangelica Oasis De Salvacion, 424 N.J. Super. 489, 498 (App. Div. 2012) (citations omitted).]

See also Auster v. Kinoian, 153 N.J. Super. 52, 56 (App. Div. 1977) (explaining a party raising an incomplete discovery defense has "an obligation to demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action").

As we noted, the parties completed depositions and exchanged answers to interrogatories. Plaintiff did not seek additional documents or more specific answers to interrogatories and the discovery period closed. At her deposition, plaintiff claimed she fell due to "[a] slippery escalator." For these reasons, discovery related to the escalator handrail or tread speeds was unrelated to proving the escalator was slippery.

Moreover, after the matter was fully briefed, plaintiff provided us with a twenty-eight second surveillance video from a ceiling security camera showing her fall. The footage is taken from a distance, plaintiff is only in frame for approximately eleven seconds and mannequins obscure a portion of her body, including the area by her feet. The video sheds no light on the reason for plaintiff's fall. Plaintiff permitted the discovery end date to elapse without

seeking the escalator repair records and she has not identified how an extension of discovery would reveal other relevant facts related to her accident.

B.

Plaintiff also asserts summary judgment was improper because the motion judge disregarded evidence demonstrating defendant had constructive notice of a slippery substance, namely video of patrons walking through the store with food that could have been the substance she slipped on. She argues because Bloomingdale's mode of operation was to permit customers to consume food and beverages throughout the store, the "heightened risks of food and drink spillage comes [with] an increased duty to inspect for and eliminate attendant hazards." She also argues there was constructive notice because the escalator was previously repaired and the Bloomingdale's incident report noted the escalator was a contributing factor to plaintiff's accident, "[t]here was ample evidence that a mechanical issue with the escalator could have caused or contributed to plaintiff's accident." Plaintiff also asserts Bloomingdale's did not produce proof of inspection of the escalator following her accident.

In order to sustain a negligence claim, plaintiff has the burden to demonstrate four elements: "(1) a duty of care, (2) a breach of that duty, (3)

A-0198-20

proximate cause, and (4) actual damages." Townsend v. Pierre, 221 N.J. 36, 51 (2015) (citation omitted). As this is a premises liability case, defendants owed plaintiff "a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." Nisivoccia, 175 N.J. at 563; see also O'Shea, 304 N.J. Super. at 492-93.

Specifically, defendant had an affirmative duty "to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." Nisivoccia, 175 N.J. at 563. To establish a breach of this duty, plaintiff must demonstrate "that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." Prioleau, 223 N.J. at 257 (quoting Nisivoccia, 175 N.J. at 563).

The parties' respective burdens, however, change substantially under the mode of operation doctrine, which addresses "circumstances in which, as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents." Nisivoccia, 175 N.J. at 563. When applicable, "[t]he rule gives rise to a rebuttable inference that the defendant is negligent, and obviates the need for the plaintiff to prove actual or constructive notice." Prioleau, 223

21

N.J. at 258. Instead, the defendant has the "obligation to come forward with rebutting proof that it had taken prudent and reasonable steps to avoid the potential hazard." Nisivoccia, 175 N.J. at 563-64.

"[T]he mode-of-operation doctrine has never been expanded beyond the self-service setting, in which customers independently handle merchandise without the assistance of employees or may come into direct contact with product displays, shelving, packaging, and other aspects of the facility that may present a risk." Prioleau, 223 N.J. at 262; see also Walker v. Costco Wholesale Warehouse, 445 N.J. Super. 111, 121-24 (App. Div. 2016) (recognizing the application of mode of operation liability principles to businesses providing goods through "self-service" operations).

To invoke the doctrine, a plaintiff must prove that the dangerous condition arose from the business's self-service operation. "The dispositive factor is . . . whether there is a nexus between self-service components of the defendant's business and a risk of injury in the area where the accident occurred." Id. at 262. The doctrine will not apply, however, where there is no evidence that "the location in which [the] plaintiff's accident occurred . . . bears the slightest relationship to any self-service component of [the] defendant's business." Id. at 264.

22

"The absence of [actual or constructive] notice is fatal to [a] plaintiff's claims of premises liability." Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013) (citing Nisivoccia, 175 N.J. at 563). "The mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" Ibid. (alteration in original) (quoting Sims v. City of Newark, 244 N.J. Super. 32, 42 (Law Div. 1990)).

We have found the mode-of-operation doctrine to apply even when plaintiff cannot definitively identify the substance that caused the fall. In Walker, the plaintiff was shopping at the defendant's warehouse store and passed a vendor offering free samples of cheesecake in small paper cups. Plaintiff then slipped on a substance on the floor, which he initially perceived as having a yogurt-like appearance. 445 N.J. Super. at 114. Plaintiff also noted "his jogging pants were 'wet' and 'smeared' from the substance, although he 'couldn't tell [the jury] exactly what it was.'" Ibid. (alteration in original). We stated:

> We recognize that plaintiff was unable to identify with precision the substance on the floor that allegedly caused him to slip. There is a plausible basis, however, to believe that the white substance could have been cheesecake, which may well have become softer, creamier, and more "yogurt-like" in appearance after being displayed in sample cups for some unspecified time at room temperature. Plaintiff's inability to describe the substance in more exact terms is understandable given the sudden and traumatic nature

of his fall. Of course, he may well have been mistaken in his description and the substance could have come from another source, but that is a factual matter for the jury to evaluate.

[Id. at 126.]

The wetness of the plaintiff's pant leg in Walker was enough to infer he had slipped on a substance causing his fall. We concluded:

The trial court failed to give plaintiff the benefit of these reasonable inferences when it declined to allow the jurors as fact-finders to consider whether the factual predicates for mode-of-operation liability were proven here. Although plaintiff has not provided a particularly compelling factual basis to support his mode-of-operation argument, he presented enough evidence to at least justify the model charge being issued.

[Id. at 127.]

Here, plaintiff failed to establish actual or constructive notice of the alleged dangerous condition. The record lacks evidence of plaintiff or any other person identifying any slippery substance before or after her accident. The facts presented here fall short of Walker.

Furthermore, the mode of operation clearly did not apply because Bloomingdales did not sell or serve food or drinks and there was no evidence the store was near a proprietor selling food or drinks. For these reasons, the surveillance video which purports to show a customer holding some sort of

24

container is not dispositive. The record lacked evidence of a store policy either permitting or prohibiting the consumption of food or drinks inside the store and plaintiff did not seek discovery on the matter.

We next address whether plaintiff's expert report established liability and thwarted entry of summary judgment. We conclude it did not.

"The net opinion rule is a 'corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data.'" Townsend, 221 N.J. at 53 (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)). It "requires that an expert 'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Ibid. (quoting Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013)). "[A]n expert's bare conclusions, unsupported by factual evidence, is inadmissible." Buckelew v. Grossbard, 87 N.J. 512, 524 (1981).

Plaintiff's expert concluded there were three possible causes of the accident: "the escalator handrail stalling, the presence of a slippery material on the steps[,] or the entrapment of the [p]laintiff[']s shoe between the step and side panel or deflector brush channel." He concluded "Schindler failed to document its maintenance" and "Bloomingdale's failed to exercise reasonable care in assuring that the escalator was being properly maintained and by failing to

document any inspections by their personnel to verify that the escalator was running properly."

Again, we note plaintiff did not blame her fall on the malfunction of the escalator in general or the handrail in particular. Nor did she state her shoe had become entangled in the escalator in any way. As we also noted, there was no evidence of the alleged slippery substance in the record. Moreover, plaintiff's expert based his opinions only on "[t]he Schindler records of emergency repairs to the subject escalator" and the "accident report prepared by Bloomingdale's security," and these documents did not reveal any mechanical or handrail malfunctions which the expert claimed were the cause of the accident. For these reasons, plaintiff's expert opinion was speculative and unsupported by the record, and as a net opinion, was not a basis to deny summary judgment.

Finally, plaintiff argues defendants' "esoteric contention that plaintiff could not withstand summary judgment because she had no 'expert opinion' to causally relate her injuries to the fall" was incorrect because "plaintiff's own testimony and a note from plaintiff's treating physician identified the escalator fall as the possible cause of her injuries" and "Bloomingdale's own incident report likewise describes the severe injuries immediately observed following her fall." Neither of these sources established the cause of plaintiff's accident.

A-0198-20

These arguments lack sufficient merit to warrant further discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION